**Harry R. SMITH, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

**No. 17449.**

United States Court of Appeals
Eighth Circuit.

April 28, 1964.

Rehearing Denied May 12, 1964.

266

Anna R. Lavin, Chicago, Ill. (Maurice J. Walsh, Chicago, Ill., with her on the brief), for appellant.

Leo E. Gross, Asst. U. S. Atty., Des Moines, Iowa (Donald A. Wine, U. S. Atty., and Philip T. Riley, Asst. U. S. Atty., Des Moines, Iowa, with him on the brief), for appellee.

Before VOGEL, MATTHES and BLACKMUN, Circuit Judges.

VOGEL, Circuit Judge.

Harry R. Smith, the appellant, and Frank Anthony Dalia, a/k/a Anthony Walters, were indicted by a grand jury in the Southern District of Iowa, charged with a violation of 18 U.S.C.A. § 2113 (a), in that on or about October 22, 1962, they, with the intent to commit a felony, to-wit, larceny, entered the Altoona State Bank, Altoona, Iowa, the deposits of said bank being insured by the Federal Deposit Insurance Corporation. Smith was enlarged on bail in the amount of $40,-000. Dalia, whose bail was reduced by this court to $20,000, was also released. Subsequently Dalia was charged with a similar offense in the District of Indiana for which he did not furnish bail. On April 25, 1963, Dalia entered a plea of guilty to the Indiana charge and under Rule 20 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., also entered a similar plea to the Iowa offense, both pleas being made in the United States District Court for the District of Indiana. On May 2, 1963, Dalia was sentenced to concurrent terms of 12 years on each of the two offenses.

Appellant Smith entered a plea of not guilty to the charge contained in the indictment in the Southern District of Iowa, was tried before a jury, found guilty and on June 27, 1963, was sentenced to confinement for a period of 20 years. Smith has appealed to this court, asking that the judgment of conviction be reversed. He raises five points of alleged error as follows:

"1. That this appellant was grossly prejudiced in the circumstances by the calling of his named co-defendant as a court's witness, and his repeated invocation of his privilege against self-incrimination.

"2. That, by calling the co-defendant, Dalia, for the sole purpose of having him admit to his prior plea of guilty, deprived this appellant of his absolute right to have the charges presented determined by the evidence presented against him and not by what happened with regard to a criminal prosecution against someone else. This was further aggravated by the Court's telling the jury that the indictment brought by

the Grand Jury, named Dalia and the appellant jointly.

"3. That, though the government was allowed to cross-examine Dalia, his claim of right to refuse to be cross-examined by this appellant was sustained, in absolute violation of the Sixth Amendment to the Constitution of the United States.

"4. That evidence was introduced against the appellant without a showing of ownership or possession, and remote as to place and time, and conviction rests on inference built on inference.

"5. That expert opinion testimony supporting his theory of defense was denied this appellant, and, that this denial was especially aggravated by foreclosing opportunity to counteract the effect of the testimony of the government's expert witnesses."

A résumé of the evidence upon which the jury found Smith guilty is necessary to an understanding of appellant's claims of error and a weighing of his claims of prejudice thereby.

The evidence established that sometime between 8 p. m. Sunday, October 21, 1962, and the early morning of October 22, 1962, a forcible entry was made into the Altoona State Bank and into a night depository safe located therein. Approximately $6,000, of which $1600 to $1800 was in currency, was taken from the safe.

At shortly after 1:15 a. m. on October 22, 1962, Iowa State Patrol Officer Calvin White was proceeding in an easterly direction on Highway No. 90 from Altoona, Iowa, to the Duffield Farm, where he was to deliver some papers. In driving through Altoona he passed and noticed the Altoona State Bank, part of a new shopping center, located on the south side of Highway 90 but he proceeded on without stopping. After completing his business at the Duffield Farm and while he was headed back west toward Altoona on Highway 90, he noticed a car coming south on a gravel road which intersects with Highway 90. This car was a 1957, 1958 or 1959 DeSoto, dark colored, and bore Illinois license plates. There was and had been no traffic between the Duffield Farm on Highway 90 and the gravel road on which the DeSoto was traveling in a southerly direction. Officer White turned north onto the gravel road, pulled up directly opposite the DeSoto and directed the driver thereof to "hold it" or words to that effect. The driver of the DeSoto did not answer or comply with the request. He drove rapidly onto Highway 90 and turned east, at times attaining a rate of speed estimated in excess of 100 miles per hour. Officer White backed onto the highway and began pursuit, following the other car at a distance of approximately 300 to 400 feet.

At one point less than a half mile from the beginning of the chase he observed an object "moving" in the middle of his side of the road. He swerved north to avoid it. It had not been seen there when he drove west after completing his business at the Duffield Farm and other than his patrol car and the car he was pursuing there had been no traffic on that portion of the highway during that time. Shortly after swerving to avoid the moving object, he noted what appeared to be paper or something of that nature flying around in the air. After some distance both vehicles overtook and passed another car bearing an Ohio license. The chase ended after about five and a half miles of high-speed driving with the DeSoto going out of control on a north curve, traveling some 580 feet from the point it left the highway and ending overturned on its top. The occupants of the DeSoto were identified as the appellant, Harry R. Smith, Paul Smith, his brother, who was the driver and who was killed in the accident, and Anthony Dalia, the appellant's co-defendant herein. Appellant and Dalia were badly injured.

After they had been given first aid and efforts had been made to revive Paul Smith, appellant and Dalia were removed by ambulance to a hospital in Des Moines. Officer White then returned to

the area where he had observed the object in the road, which turned out to be a Navy-type sea bag containing a sledge hammer, pry bars and other tools. A search of the highway over which the pursuit had continued resulted in finding currency, including a $100-bill, some 50's and smaller bills with an Altoona State Bank deposit slip attached by paper clip. There were also found several other Altoona State Bank night deposit envelopes containing checks and currency identified as having been deposited in the Altoona night depository safe during that portion of the week-end prior to the break-in. These were mainly found west of the Duffield Farm but all within one and one-half miles to two miles of the beginning of the route of the chase. In the opinion of expert witnesses, tools found in the green Navy-type sea bag had been used on the doors of the Altoona State Bank and its safe.

Appellant's first three claims of error spring from the calling of Smith's co-defendant, Dalia, as a "Court's witness", the testimony elicited from him, as well as the fact that on numerous occasions he refused to answer, claiming his privilege under the Fifth Amendment. Near the close of the government's case the United States Attorney requested "that Mr. Dalia be called as the Court's witness for the purpose of cross-examination in view of the fact that he was named in this indictment." Defendant objected "to any witness being called as a Court's witness without some basis or foundation". The government's attorney then stated:

"If the Court please, the witness Anthony Dalia was named in the indictment which is part of the Court record and has entered a plea of guilty in Indiana to the charge of entering the Altoona State Bank, the identical indictment in which this defendant is charged, that is, entering the Altoona State Bank to commit a felony, to-wit, to commit a larceny. The Government feels this witness has information bearing on this case, but the Government in view of his implication is not prepared to vouch for him."

The government's motion was granted. Dalia was called as a "Court's witness", his testimony being set forth in the margin.[1]

1. "EXAMINATION BY MR. GROSS:

"Q. Would you state your full name?

"A. Frank Anthony Dalia.

"Q. And Mr. Dalia, have you also been known as Anthony Walters?

"A. I invoke the Fifth Amendment.

"Q. Mr. Dalia, I am going to ask you whether or not you were charged in an indictment with entering the Altoona State Bank on October 22nd, 1962, the deposits of which were then and there insured in the Federal Deposit Insurance, with intent to commit a felony, to-wit, a larceny, which the Grand Jury returned a charge against you?

"A. I never had an Indictment read to me to that effect.

"Q. Did you enter a plea of guilty to that charge?

"A. To the one you just stated?

"Q. Yes.

"A. I would like to invoke the Fifth Amendment there, also.

"THE COURT: The Court at this time will tell you to answer.

"A. Yes, sir.

"Q. Pardon?

"A. Yes, I did.

"Q. Your testimony is that you did enter a plea of guilty to a charge of entering the Altoona State Bank?

"A. No, I didn't enter a plea to that. I entered a plea of guilty, but not to that specific charge.

"Q. What did you plead guilty to?

"A. It was a case of bank burglary.

"Q. At the Altoona State Bank?

"A. Yes.

"Q. In Altoona, Iowa?

"A. Yes.

"Q. On October 22nd, 1962?

"A. I imagine so, yes.

"Q. Is your answer to your last question 'yes'?

"A. Yes, sir.

"Q. Now, Mr.—Do you pronounce that Dalia or Dalia?

"A. Dalia.

"Q. Dalia?

"A. Yes, sir.

"Q. And were you involved in an accident, Mr. Dalia, in the early morning hours of October 22nd, 1962?

"A. I so was.

"Q. And where did that accident take place?

"A. In Iowa. I don't know exactly where.

"Q. Would it have taken place about five and one-half miles east of Altoona?

"A. I imagine so.

"Q. And who was in the car with you, Mr. Dalia?

"A. I would like to invoke the Fifth Amendment.

"THE COURT: The Court will not compel the answer.

"Q. Mr. Dalia, where were you in the early evening hours of October 21st, 1962?

"A. I would also like to invoke the Fifth Amendment.

"Q. And where is your home, Mr. Dalia?

"A. Chicago.

"Q. How long have you lived there?

"A. All my life.

"Q. And are you acquainted with the defendant in this case, Harry R. Smith?

"A. I would like to invoke the Fifth Amendment.

"Q. Are you acquainted with the gentleman who was involved and killed in the accident—Mr. Paul Smith?

"A. The Fifth Amendment on that also.

"Q. How long were you in Iowa around the date of October 22nd, 1962?

"A. The Fifth Amendment on that.

"Q. Did you leave Chicago, Illinois, with the defendant, Harry R. Smith?

"A. The Fifth Amendment.

"Q. How long had you been traveling on the road with the defendant, Harry R. Smith?

"A. The Fifth Amendment.

"Q. Following the accident did you go to Broadlawns General Hospital?

"A. I was taken to a hospital.

"Q. Here in Des Moines, Iowa?

"A. Yes.

"Q. How long were you in Altoona, Iowa, on the evening of October 21st, 1962, or the early morning of October 22nd, 1962?

"A. The Fifth Amendment.

"Q. Do you know how long the defendant in this case, Mr. Harry R. Smith, was in Altoona on the evening of October 21st or the morning hours of October 22nd?

"A. The Fifth Amendment.

"Q. Pardon?

"A. The Fifth Amendment.

"Q. Did you enter the—Strike that.

"Did you enter the front doors of the Altoona State Bank on that date?

"A. The Fifth Amendment.

"MR. GROSS: I have no further questions.

"MR. LAWYER: [Attorney for appellant] Your Honor, could I beg leave of the Court for about a five-minute delay for the purpose of consultation with counsel?

"THE COURT: You shall have it. The Court at this time will take a ten-minute recess. The jury will retire to the jury room, bearing in mind the former admonitions.

"(Recess: 4:13 p. m. to 4:30 p. m.) (Whereupon jury returned into open court and the record proceeded, to-wit:)

"EXAMINATION BY MR. LAWYER:

"Q. Mr. Dalia, you are now in the custody of the Attorney General of the United States under a sentence from the United States Federal District Court at Indianapolis, Indiana, is that correct?

"A. Yes, sir.

"Q. And you are serving at this time a sentence based upon a plea to bank burglary in Indianapolis, Indiana, is that correct?

"A. Yes, sir.

"Q. And when was that plea entered?

"A. April 25th, I believe.

"Q. And then were you transported here from Indianapolis, is that true?

"A. Yes, sir.

"Q. By the United States Marshal's office?

"A. Yes, sir.

"Q. And you're now confined in Polk County jail in the federal section, is that true?

"A. Yes, sir.

"Q. And you received, I believe, a 12-year sentence in Indianapolis, is that true?

"A. Yes, sir.

"Q. And that was on the Indianapolis charge, was it not?

"A. Well, it was in Indianapolis, the court. It was in New Albany, Indiana, a charge.

"Q. Since you have been here, Mr. Dalia, has the United States Attorney advised you of your rights in any respect?

"A. No, sir.

"Q. Do you have counsel at this time for that purpose?

"A. No, sir.

"Q. Do you desire counsel for that purpose?

"A. Yes, sir.

"Q. What's your education, sir?

"A. Ten years.

"Q. Tenth grade?

"A. Tenth grade, yes, sir.

"MR. LAWYER: If the Court please, there is further cross-examination of this witness which I feel is necessary. I don't feel that I want to pursue or trample on

his rights and I feel that he should be entitled to be advised.

"THE COURT: Members of the jury, at this time we will take our regular evening intermission. You will bear in mind the admonitions heretofore given you by the Court and be at recess until 9:30 a. m. tomorrow morning. You are recessed. The jury is recessed.

"(Recess: 4:35 p. m., Tuesday, May 14, 1963.) (Following record made in absence of jury:)

"EXAMINATION BY THE COURT:

"Q. Mr. Dalia, are you here on any charge?——You're not here charged, here with anything, are you?

"A. In this court?

"Q. Yes?

"A. No, sir.

"Q. And you are here as a witness, is that all?

"A. Well, there is a state charge pending against me.

"Q. But you're not here on any charge, here in this court?

"A. No, sir.

"Q. And is it my understanding from your answer to the cross-examination of the defendant's counsel that you were in need of counsel here?

"A. Well, I would like to speak to an attorney; yes, sir.

"Q. Do you have the funds with which to employ counsel?

"A. No, I don't.

"Q. And you desire to speak to a lawyer with relation to this matter?

"A. Yes, sir.

"Q. That is, before you answer any questions of the defendant?

"A. Yes, sir.

"Q. And this is for the purpose of being able to answer questions now proposed to be made by counsel for the defendant?

"A. Well, in the way of protecting myself. That's what I would like counsel for.

"Q. From any interrogatories here proposed by the defendant?

"A. By anyone, the Government or State.

"Q. You have already made your answers to the one. You never indicated to the Court that you desired counsel, have you?

"A. I never had the opportunity.

"Q. I see. Have you indicated to anyone you desired counsel?

"A. Yes, sir.

"Q. To whom have you indicated you desired counsel?

"A. I believe I mentioned to the Marshal.

"Q. And you do desire counsel before you proceed further?

"A. Yes, sir.

"THE COURT: The Court will take the matter under consideration. Court's at recess.

(Recess: 4:37 p. m.)"

On the following morning, Frank Oliver was introduced to the court as a member of the Chicago bar, his admission to practice was moved, granted and he thereupon entered the record as "attorney for the witness Frank Anthony Dalia". Attorney Oliver had prepared and submitted to the court a "Motion for Judgment of Acquittal" in behalf of Dalia claiming, inter alia, improprieties and that "blandishments offered to him by the prosecution" induced him to enter his plea of guilty. The motion was taken under advisement. Thereupon, Smith moved the court to strike the testimony of the witness Dalia and for a mistrial. The motion for a mistrial was denied. Ruling on the motion to strike Dalia's testimony was reserved. Whereupon, Dalia was returned into open court and the following transpired:

"THE COURT: Take the witness stand.

"MR. DALIA: Your Honor, I would like to speak to my lawyer before I get back on the stand.

"THE COURT: You may.

"(Whereupon the witness proceeds to the rear of the courtroom and visits with Mr. Oliver following which the following record was made.)

"MR. DALIA: Your Honor, my attorney has advised me I don't have to take the stand because my rights are being violated.

"THE COURT: What did you say?

"MR. DALIA: My attorney has advised me I don't have to take the stand because of the fact my rights are being violated.

"THE COURT: That you will have to take the stand by reason they are?

"MR. DALIA: No, I don't have to, Your Honor.

"THE COURT: And you don't want to take the stand?

"MR. DALIA: No, sir.

"THE COURT: And it is my understanding that you refuse to take the stand?

"MR. DALIA: Because of the fact my rights are being violated. I am being brought in this court against my wishes. I was brought out of Indiana without opportunity to consult counsel. I was

brought here without the opportunity to consult counsel.

"THE COURT: You will take the stand.

"MR. DALIA: Pardon?

"THE COURT: You will take the witness stand.

"MR. DALIA: Your Honor, it's a violation of all my rights to take the stand.

"THE COURT: The Court has told you to take the witness stand. Take the witness stand.

"MR. DALIA: Do you want to protect my rights?

"THE COURT: I asked you to take the witness stand.

"MR. DALIA: Your Honor, you are forcing me to it without my rights.

"EXAMINATION BY MR. LAWYER (continuing):

"Q. Your name is Frank Anthony Dalia or Dalia?——

"MR. LAWYER: I ask the Court to instruct the witness to answer.

"THE COURT: The Court will not instruct the witness to answer because he has already answered that question.

"Q. (By Mr. Lawyer) Mr. Dalia, state whether or not on the 22nd of October, 1962, you entered the Altoona State Bank, Altoona, Iowa?——

"MR. LAWYER: I request the Court to instruct the witness to answer.

"THE COURT: The Court will not compel the witness to answer the interrogatory.

"Q. (By Mr. Lawyer) Mr. Dalia, did you or did you not advise anyone on behalf of the prosecution or an official of this court that you would refuse to testify prior to coming to Court yesterday?——

"MR. LAWYER: I request the Court to instruct the witness to answer.

"THE COURT: The Court will not require the witness to answer.

"Q. (By Mr. Lawyer) Mr. Dalia, where do you live?——

"MR. LAWYER: I request the Court to instruct the witness to answer.

"THE COURT: The witness, if not having already answered, is not required to answer further.

"Q. (By Mr. Lawyer) Mr. Dalia, I ask you whether or not you have any information which would bear on the innocence of Harry Smith sitting here to the left of me two persons down, this man sitting right here?——

"MR. LAWYER: I request the Court to instruct the witness to answer.

"THE COURT: The Court will not require the witness to answer.

"Q. (By Mr. Lawyer) Mr. Dalia, you testified yesterday that you pleaded guilty to a charge of bank burglary in Indianapolis, Indiana, in connection with a bank in Indiana. State whether or not you received a concurrent sentence, identical to the sentence imposed in that case?——

"MR. LAWYER: I request the Court to instruct the witness to answer.

"THE COURT: If the witness hasn't already answered, he is not required to answer.

"The examination of this witness is now concluded. The Court's witness has now concluded. You will now retire from the witness stand. The jury will retire to the jury room.

"(Whereupon the witness, Mr. Dalia, leaves the courtroom with a Marshal and the jury retires to the jury room.)

"THE COURT: Let the record show in this cause that the witness Dalia has taken the witness stand at the Court's request. That opportunity of cross-examination has been afforded the defendant prior to this time and again at this time. That there has been in every aspect a constant injection into the record by counsel for the defendant of questions that have already and previously been asked and answered. That this Court is not about to tolerate any aggravation of any matters that may have occurred heretofore. That it is apparent to the Court, and the Court wants this a part of the record, that he wants this an orderly, carefully tried case in accordance with the interest of the defendant and of all parties concerned. That the administration of justice requires this statement in the record at this time, and defendant's counsel, and the defendant, is given due exception to the remarks of the Court. This has been made out of the presence of the jury. That will be all.

"Call the jury back and proceed.

"MR. LAWYER: Your Honor, may I make a little further record, please?

"Comes now the defendant and respectfully asks the Court to declare a mistrial for the reason the defendant has not been afforded an opportunity to cross-examine the witness and has there been deprived under Article 6.

"THE COURT: It's overruled. Call the jury.

"MR. GROSS: Your Honor, at this time could we request that Dalia be returned to the courtroom for purposes of identification by another witness?

"THE COURT: No, you may not.

"(Whereupon the jury returned into open court.)"

The practice in criminal cases of calling someone as a court's witness, while seldom used and not particularly desirable, is recognized as proper in both state and federal courts. United States v. Lutwak, 7 Cir., 1952, 195 F.2d 748, 754–755; Annot., 67 A.L.R.2d 538. The exercise of the right or rule is a discretionary matter with the trial court and only for an abuse of that discretion resulting in prejudice to the defendant will the trial court be judged in error and a conviction reversed. The result of one being called as a court's witness is not too dissimilar from that of having a witness adjudged a hostile or a surprise witness. The effect is that neither party to the suit may be held responsible for the testimony of the witness and both of course may exercise the privilege of cross-examination. Probably the leading and most cited case in connection with the calling of a witness by the court is Litsinger v. United States, 7 Cir., 1930, 44 F.2d 45, at page 47, wherein the court stated:

"The rule which permits the trial court to call and examine a witness at the request of the government's attorney is quite a reasonable one and is well recognized. If judiciously exercised it is productive of no harm; and many times, by extending to attorneys the right to cross-examine and to impeach on material matters, it prevents a failure of justice."

Judge Learned Hand, in United States v. Marzano, 2 Cir., 1945, 149 F.2d 923, said at page 925:

"It is permissible, though it is seldom very desirable, for a judge to call and examine a witness whom the parties do not wish to call. United States v. Breen, 2 Cir., 96 F.2d 782, 784; United States v. Gross, 7 Cir., 103 F.2d 11, 13. A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert. Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct.

698, 77 L.Ed. 1321; Montrose Contracting Co. v. Westchester County, 2 Cir., 94 F.2d 580, 583."

While holding in that case that the calling of a witness as a court's witness was a proper procedure, the court there nevertheless reversed because the trial judge "entered the lists" and threatened the witnesses who had pleaded guilty but whom he had not yet sentenced. The implication of the trial judge's threat was that if the witnesses persisted in certain testimony which he believed untrue, penalties heavier than he first intended would be invoked. Of course a conviction based on such gross error was reversed and a new trial ordered.

Among the cases relied on by the appellant and which we find are distinguishable on their facts, appellant cites and particularly points to a case from the Supreme Court of Illinois, People v. Bennett, 1953, 413 Ill. 601, 110 N.E.2d 175. That is, of course, a state case propounding the law of the State of Illinois but it is also distinguishable for a number of other reasons. There the appellant Bennett and one Kirkpatrick were *separately* indicted for burglary and larceny. Bennett was brought to trial before Kirkpatrick. During Bennett's trial Kirkpatrick was subpoenaed as a witness. He asked leave to intervene for the purpose of objecting to his being called as a witness for the reason that his appearance and examination would tend to incriminate him. Nevertheless, the court allowed the state's attorney to call Kirkpatrick as a witness and over Bennett's objection was allowed to show that Kirkpatrick was under separate indictment for burglary and larceny. He was repeatedly questioned concerning the details of the alleged crime and compelled to again and again rely on his constitutional privilege by refusing to answer the questions. The Illinois court stated at page 176 of 110 N.E.2d:

"The practice of the court's calling a witness at the request of the prosecution in a criminal case has been recognized where the person called is an eyewitness to the crime

and the State's Attorney doubts the veracity and integrity of such witness. * * * This practice, however, has been restricted to cases where it is shown that otherwise there might be a miscarriage of justice. People v. Laster, 413 Ill. 224, 108 N.E.2d 421; People v. Johnson, 333 Ill. 469, 165 N.E. 235."

Kirkpatrick had refused to talk to the state's attorney about the answers to certain questions prior to appearance in court so the state was aware the privilege would be claimed. Holding that the showing made by the state was insufficient, the court stated at page 176 of 110 N.E.2d:

" * * * Not only did the State's Attorney fail to make a proper showing, but by his questions before the jury compelling the witness to claim his constitutional privilege, he was able to suggest by implication, innuendo and insinuation that Kirkpatrick and defendant had committed the crime for which defendant was on trial. While the examination added little material evidence to the trial, it was certainly well calculated to prejudice the defendant in the eyes of the jury. Moreover, nothing was shown thereby without which a miscarriage of justice would have resulted. In light of the lack of a proper showing by the State's Attorney in making his request and the resulting prejudicial effect, it was error for the court to call Kirkpatrick as its own witness and allow a cross-examination by the People."

After directing attention to a number of other errors in the trial, the court said at page 179 of 110 N.E.2d:

" * * * Whether each individual error here recited would itself be sufficient ground for reversal we need not determine, as there can be no doubt that collectively they produce such prejudice and error as to make it incumbent upon this court to reverse the judgment."

■ Here the government had practically concluded submission of its case. Uncontradicted testimony linked co-defendant Dalia with the appellant Smith. Dalia was found in the same car with Smith and Smith's brother, who was killed in the accident. Dalia had been a co-defendant in the case. He was named in the body of the indictment, " * * * the defendants Harry R. Smith and Frank Anthony Dalia, aka Anthony Walters, entered the Altoona State Bank * * *." Dalia had entered a plea of guilty after the charge against him was, at his request, transferred under Rule 20, Federal Rules of Criminal Procedure, 18 U.S.C.A., to the District of Indiana, where his plea of guilty was accepted and wherein he received a 12-year sentence. It would seem perfectly obvious that Dalia did possess information pertinent to the issues presented in the trial against appellant Smith. It would also seem natural that the government should have been hesitant about sponsoring Dalia as its witness and we think it not unreasonable that the government asked the trial court to designate Dalia as a court's witness so that the right to cross-examine might be had. Another method of arriving at the same result would have been the calling of Dalia as a government witness, with the expectation that inasmuch as he had already pleaded guilty and had been sentenced that there was no reason why he should not testify to the truth. If, when so called, Dalia testified to what the government believed was not the truth, the government could ask for the right to cross-examine on the grounds of surprise or that Dalia was a hostile witness. The government did not know what Dalia's testimony would be as it had made no inquiry from him prior to the time he was placed on the stand. Be that as it may, we find no abuse of discretion on the part of the trial court in granting the government's motion and allowing the government to cross-examine Dalia.

■ It will be noted that almost from the beginning Dalia picked out certain questions, claiming the Fifth Amend-

ment privilege as to his being forced to answer thereto. The information received from him by the government's examination was insignificant because of his exercise of that privilege. The fact that he had been a co-defendant, that he had been with Smith and Smith's brother in the automobile which was chased by Officer White was already known to the jury through the testimony of a number of witnesses whose statements were not controverted prior or subsequent thereto. Appellant had not testified at that time and did not testify at all during the trial. No prejudice resulted to Smith by the calling of Dalia, his cross-examination and his admission that he was a co-defendant and that he had entered a plea of guilty and had been sentenced in the United States District Court for the District of Indiana. Failure to have called Dalia under the circumstances existing might have furnished the appellant with the inference that his, Dalia's, testimony would have been against the government. As was said by Judge Gardner in Wesson v. United States, 8 Cir., 1949, 172 F.2d 931, 936:

" * * * But the government did not produce any or either of these parties as witnesses. [Persons to whom the defendant in that case allegedly made sales of narcotics.] Defendant was clothed with the presumption of innocence and it was incumbent upon the government to prove his guilt beyond a reasonable doubt. The failure of the government, under the circumstances disclosed, to call these witnesses justifies, if it does not compel, the inference that their testimony would have been against the government. Aetna Casualty & Surety Co. v. Reliable Auto Tire Co., 8 Cir., 58 F.2d 100; Goldie v. Cox, 8 Cir., 130 F.2d 695; Donnelly Garment Co. v. Dubinsky, 8 Cir., 154 F.2d 38; Futrell v. Arkansas-Missouri Power Corporation, 8 Cir., 104 F.2d 752."

The contention that the appellant was prejudiced through Dalia testifying that he had entered a plea of guilty to burglarizing the Altoona State Bank cannot be sustained. Judge Hanson was meticulous in his instruction to the jury with reference to Dalia. He stated:

"INSTRUCTION NO. 3

"A Grand Jury for this District returned an Indictment against Harry R. Smith and Frank Anthony Dalia. During the course of the trial, testimony has been received concerning a plea of guilty as it relates to one of the witnesses, Frank Anthony Dalia. With respect to this matter, you are told that you will not consider the matter of a plea of guilty as evidence against the defendant in this cause. The fact of this plea in no way means or implies that the defendant herein on trial, Harry R. Smith, is guilty as charged. Any plea of Frank Anthony Dalia does not give rise to any inference as to the guilt of Harry R. Smith now on trial. The guilt or innocence of the defendant here on trial must be determined solely by the evidence introduced at the trial of this case. Likewise you will not speculate as to the significance of the plea of Frank Anthony Dalia nor will you give it any consideration in arriving at your verdict concerning the defendant in this case.

"You are further told that only Harry R. Smith is here on trial and the fact that the name of Frank Anthony Dalia appears as one of the co-defendants in the Indictment shall be given no significance.

"An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. If you find that the witness Frank Anthony Dalia is an accomplice, the credibility is for the jury to pass upon. However, such testimony should be received with caution and weighed and scrutinized with great care bearing in mind all portions of this instruction.

"INSTRUCTION NO. 4

"The witness Frank Anthony Dalia after having given some testimony made claim to the constitutional right against self-incrimination, which claim was sustained by the Court. The fact that said witness made said claim and that said claim was sustained by the Court is not to be given any weight or consideration by you in arriving at your verdict."

This court in Nigro v. United States, 8 Cir., 1941, 117 F.2d 624, 133 A.L.R. 1128, had occasion to deal with, among other things, the question of the propriety of telling the jury that co-defendants of the one on trial had pleaded guilty. The court said at page 632 of 117 F.2d:

" * * * The jury, however, should not be told that defendants the Conleys and Darling have pleaded guilty, unless they appear as witnesses and testify to their guilt. See Walker v. United States, 8 Cir., 93 F.2d 383, 395."

In the instant case, no objection was made at the time Dalia testified that he had entered a plea of guilty, although subsequently thereto motions to strike and for a mistrial were made by appellant. We hold, however, that if there could possibly have been any prejudice to the appellant through Dalia, who testified as a witness that he had pleaded guilty, it was well healed by the trial court's careful admonition in Instructions Nos. 3 and 4, supra. "Our theory of trial relies upon the ability of a jury to follow instructions." Opper v. United States, 1954, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101.

In Wood v. United States, 8 Cir., 1960, 279 F.2d 359, this court, through Judge John Sanborn, said at page 363:

"We think the trial court did what it should have done, when it advised the jury panel that the defendants Brown and Nair had entered pleas of guilty to Count I of the indictment, and as to the effect of the pleas upon other defendants. We also approve the statement of the court to the jury with respect to the entry of pleas of guilty by Kawell, Neudeck and Barham to Count I during the trial. See, in this connection: Davenport v. United States, 9 Cir., 260 F.2d 591, 596; Holmes v. United States, 8 Cir., 134 F.2d 125, 129–130; Kelling v. United States, 8 Cir., 121 F.2d 428, 429. The court did not err in denying the motion for a mistrial based on the fact that the pleas of guilty to Count I by three of the defendants were entered after the trial commenced; nor did it err in not again referring to these guilty pleas, or their effect, in its final instructions to the jury."

■ Appellant Smith's contention that he was prejudiced by Dalia's repeated invocation of the privilege against self-incrimination, and thereby denied the opportunity of cross-examination, is also unpersuasive. First, it will be noted that Dalia began claiming his privilege from the second question asked him by the government, although he did answer on preliminary and collateral matters. When counsel for the appellant began his cross-examination, Dalia answered each question, at no time claiming his privilege until counsel for the appellant suggested that he needed the advice of counsel before he was to be cross-examined further. In effect, he invited the witness to then claim his privilege. The result was that after Dalia had arranged for counsel, he thereupon at first refused to take the witness stand and at no time thereafter did he answer any question but remained mute. Such building of a hedge in order to rely thereon as error is like the knocking down of a straw man which one has created for that very purpose and effect. It caused no prejudicial error by the trial court, particularly in light of the court's Instruction No. 4, supra.

■ It must be conceded, of course, that the right of one charged with crime to confront the witnesses against him is guaranteed by the Sixth Amendment and that that includes the right of cross-examination. If the right to cross-ex-

amine such witness is unduly restricted, the witness' entire testimony should be stricken but there are exceptions. As was stated in United States v. Cardillo, 2 Cir., 1963, 316 F.2d 606, 611:

" * * * However, reversal need not result from every limitation of permissible cross-examination and a witness' testimony may, in some cases, be used against a defendant, even though the witness invokes his privilege against self-incrimination during cross-examination. In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him. United States v. Kravitz, 3 Cir. 1960, 281 F.2d 581; Hamer v. United States, 9 Cir. 1958, 259 F.2d 274; United States v. Toner, 3 Cir. 1949, 173 F.2d 140. *On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part*, Montgomery v. United States, 5 Cir. 1953, 203 F.2d 887; cf. United States v. Andolschek, 2 Cir. 1944, 142 F.2d 503; Stephan v. United States, 6 Cir. 1943, 133 F.2d 87; United States v. Keown, W. D.Ky. 1937, 19 F.Supp. 639." (Emphasis supplied.)

And at page 613:

"*This is not to say that every refusal to answer by a witness, claiming his constitutional right against self-incrimination, requires the striking of his testimony or a part thereof.* There would appear to be at least three categories to be considered. The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice. The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose. As to the first and second categories suggested, whether all or a part of the testimony should be stricken, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances. Unsatisfactory as such a generality is for a trial judge who is required to give instantaneous rulings on close questions and who does not enjoy the luxury of reflective appellate deliberation, any set of specific dogmas would be even more unworkable."

(Emphasis supplied.)

In the instant case, Dalia, when examined by the government, testified to his name, the fact that he entered a plea of guilty, that he lived in Chicago all of his life, that he was involved in an accident about five and a half miles west of Altoona on October 22, 1962, and that following the accident he was taken to a hospital in Des Moines, Iowa. These were merely preliminary or collateral matters. On all other questions propounded by the government he maintained his privilege. When Dalia was first

examined by appellant's counsel, he answered every question asked of him, covering the information he had given in answer to the government's questions as fully as when examined by the government. On no question did he maintain his privilege. After he had engaged counsel, however, at the suggestion of appellant's attorney, he refused at first to return to the witness stand and when he did he remained mute. It should be noted that his answers to questions propounded by appellant's counsel covered the same preliminary ground he covered upon being examined by the government. We therefore find no prejudice to the appellant and no error in refusing to strike the preliminary answers given by Dalia in examination by both parties. We believe that the court's admonition adequately took care of the situation.

The fourth claimed error in effect is an attack upon the sufficiency of the evidence. It has to do particularly with (1) the green Navy-type sea bag filled with different kinds of tools which, concededly, had been used to enter the Altoona State Bank and to break the safe; (2) checks and papers found on the highway showing to have originated from the Altoona Bank, and currency picked up on the highway or the ditches thereof during the search; (3) a pair of shoes found about five and a half hours after the accident in the passenger compartment of the wrecked car in which the appellant, the co-defendant Dalia and Paul Smith, the driver who was killed, were riding. It is the contention of the appellant that:

"There was a failure to prove that the tools, found to have been used to enter the bank and safe, were ever in the fleeing automobile, or in the possession of its occupants";

that

"There was a failure to prove, beyond the inventory, that the appellant was not wearing shoes when admitted to the hospital";

and that

" * * * Nothing alleged to have been removed from the Bank was found in the possession of Smith, Dalia or the dead man, or in the car."

Appellant's contention is, in substance, that the exhibits referred to were admitted without proper foundation; that there was no connection between such exhibits and the appellant; and that the government's case against the appellant rests on inference built on inference.

 This case, having been submitted to a jury and the jury having returned a verdict of guilty, must be viewed in the light most favorable toward sustaining the jury verdict. We must assume that all conflicts in the evidence, if there were such, were resolved by the jury in favor of the government and the government, as the prevailing party, is entitled to the benefit of all favorable inferences which may reasonably be drawn from the facts proven. If reasonable minds might reach different conclusions or draw different inferences, then the jury's determination must be sustained. Slocum v. United States, 8 Cir., 1963, 325 F.2d 465, 468; Thogmartin v. United States, 8 Cir., 1963, 313 F.2d 589, 590; Koop v. United States, 8 Cir., 1961, 296 F.2d 53, 54; Valentine v. United States, 8 Cir., 1961, 293 F.2d 708, 710; Dean v. United States, 8 Cir., 1957, 246 F.2d 335, 336–337.

 First, with reference to the green sea bag containing the tools which were used to break into the bank and safe, we think the government introduced sufficient evidence to justify the jury in connecting the appellant with the bag and the tools contained therein. The testimony is uncontradicted that just prior to the high-speed chase, no other cars, with the exception of Officer White's patrol car, had traversed that portion of the highway between the Duffield Farm and the gravel road leading north from Highway 90. When Officer White covered this portion of the highway immediately prior to the chase he saw no objects. The vehicle in which the appellant was riding refused to stop when requested to do so by Officer White, who was driving a patrol car with a red top light. The

driver of the vehicle in which appellant was riding attempted to outrun the patrol car. After getting onto Highway 90, it proceeded in an easterly direction over the same portion of the road Officer White had just traversed. It traveled at speeds estimated in excess of 100 miles per hour. Officer White followed within a distance estimated at 300 feet. During this chase he saw an object moving across the highway which turned out to be the tool bag in question. He also saw numerous objects appearing to be paper fluttering in the air, but concededly he did not see the bag or other objects thrown from the moving car in which the appellant was riding. As to the question of the shoes, the testimony indicates that, following the accident, both Dalia and Paul Smith, the deceased, were wearing shoes; that the appellant Smith was not wearing shoes and that sometime subsequently a pair of shoes was found in the wrecked car and that soil samples taken from the ridged and striated soles of the shoes were similar to soil samples found in front of the Altoona State Bank safe door. We do not view this testimony as allowing the jury to pile inference on inference and thus arrive at a verdict of guilty based upon mere suspicion and conjecture. The jury's conclusions that the appellant and his cohorts in the fleeing car threw the damaging evidence consisting of the sea bag with its tools, concededly used in the burglary, into the path of the pursuing officer and that they threw the checks, currency and deposit slips from the Altoona Bank out of the car as they fled in front of the officer, are parallel inferences deduced from uncontroverted evidence. The jury could similarly infer that the appellant Smith, who had no shoes on when he arrived at the hospital, was the owner of the single pair of shoes found in the car in which he had been riding, which shoes contained soil samples similar to that found in front of the Altoona Bank safe. The evidence against the appellant is, of course, circumstantial, but it is also very convincing and we hold it to be sufficient to justify the jury's conclusion that the appellant was one of those who participated in the burglary of the Altoona Bank.

Appellant's fifth and last point has to do with the trial court's rejection of certain expert testimony offered in appellant's behalf. George S. Reese, being called by the appellant, testified that he had been employed for 17 or 18 years in repairing safes and door locks and many times came in contact with safes that had been broken open and professed a special knowledge in the area of safe insulation. He identified Exhibit H as a piece of "fireproof insulation of a fireproof door, cabinet-type"; and testified that fireproof insulation was generally made from the same materials but that "different manufacturers have their own specifications that they use. It isn't all exactly the same"; that when insulation was broken up, it becomes dusty and very light; that it is difficult to work around safe insulation without getting it on your clothing and that he had at times had it all over his clothing. He was then asked:

"Q. Mr. Reese, based upon your experience and knowledge working with safes, do you have an opinion as to whether or not a person could work in and near this safe without having some fibrous dust or something on his clothing?

"Mr. Gross: Object, Your Honor, calling for the opinion and conclusion of the witness and no proper foundation has been laid for this testimony.

"The Court: Sustained.

"Mr. Lawyer: The defendant offers in evidence Exhibit H.

"Mr. Gross: Object, Your Honor, on the grounds that it's incompetent, irrelevant and immaterial to any issue in this case, no connection at all, no probative value.

"The Court: Sustained at this time unless there is further examination at this time to connect it up with this."

Thereupon the witness was asked to compare Exhibit H with Plaintiff's Exhibit 13, which was part of the Altoona Bank safe door. He stated that it was "simi-

lar" and that Exhibit H was "a fairly representative piece of insulation material found on an ordinary safe". Exhibit H was then re-offered and the government's objections thereto overruled.

■■ Prior to the introduction of Reese's testimony, the appellant had called Andrew Newquist, a special agent of the Iowa Bureau of Criminal Investigation, Identification Division, who had testified earlier in behalf of the government that he had sent the appellant's clothing to the FBI laboratory in Washington. Newquist testified, upon being called by the appellant, that there was no report from the FBI laboratory as to the finding of a concrete or fibrous substance on the appellant's clothing; that he did not recall any such substance being found or reported to have been found on the shoes found in the wrecked automobile or in the soil sample, Exhibit 12. We cannot find that the appellant was in any way prejudiced by the court's ruling with reference to the question regarding the fibrous dust from "this safe". Appellant was allowed to show that similar insulation was likely to stick to clothing, that it was difficult to work around safe insulation without getting it on one's clothing, and that the FBI laboratory reports did not disclose any insulation material found in the clothing taken from the appellant, the shoes found in his car or the soil samples connected with the soles of the shoes. In other words, the appellant got before the jury practically all the testimony he desired, the only exclusion being that the witness was not allowed to answer the question when it was directed to "this safe" and its fibrous dust. Reese showed no familiarity with "this safe" and this particular insulation. The trial court acted within its discretion in sustaining the government's objection and we find that in so doing its discretion was in no way abused. United States v. Stoppelmann, 8 Cir., 1959, 266 F.2d 13, 20; Walsh v. Bekins Van Lines Co., 8 Cir., 1954, 217 F.2d 388, 390; Davis v. R. K. O. Radio Pictures, Inc., 8 Cir., 1951, 191 F.2d 901, 903–904. Here, even though

an offer of proof was not made, the record indicates that appellant brought to the jury's attention everything he was entitled to have; i. e., that a similar substance would most likely get into the clothing of persons working in the vicinity and that reports of the FBI laboratory as to appellant's clothing did not indicate that the appellant's clothing had such substance therein.

A careful review of this substantial record impels the conclusion that the appellant was fairly tried, that the evidence of his guilt was substantial, and that no prejudicial error was committed.

Affirmed.