**Harry R. SMITH, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20097.**

United States Court of Appeals,
Eighth Circuit.

Sept. 4, 1970.

Rehearing Denied Oct. 19, 1970.

1

**2**

Mr. Harry R. Smith, filed brief pro se.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, and Claude H. Freeman, Asst. U. S. Atty., filed brief for appellee.

Before JOHNSEN, Senior Circuit Judge, VAN OOSTERHOUT and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is a timely, in forma pauperis, pro se appeal from an order entered by Judge Hanson, Southern District of Iowa, denying to Smith relief sought under a § 2255 motion to vacate a 20 year sentence imposed June 27, 1963, in the Southern District of Iowa after petitioner was found guilty by a jury of violating 18 U.S.C.A. § 2113(a) (bank robbery). We affirmed the conviction. Smith v. United States, 8 Cir., 331 F.2d 265, cert. denied 379 U.S. 824, 85 S.Ct. 49, 13 L.Ed.2d 34, reh. denied 379 U.S. 940, 85 S.Ct. 321, 13 L.Ed.2d 350. Denial of an earlier § 2255 motion attacking the same sentence was also affirmed on appeal. Smith v. United States, 8 Cir., 356 F.2d 868.

On June 19, 1969, Smith, then represented by counsel, filed a § 2255 motion in the district court in which he presented the following five grounds for vacation of his sentence:

1. That his conviction must be set aside in light of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

2. That his conviction was obtained by the use of illegally seized evidence.

3. That the trial court sentenced him under the mistaken belief that in order to afford him the benefit of the provisions of 18 U.S.C. 4208 (a), it was necessary to impose the maximum penalty.

4. That the severity of his sentence was a product of false information supplied to the sentencing court, which conveyed an exaggerated impression of his criminality, and that the trial court's failure to give him an opportunity to refute such information deprived him of due process of law.

5. That his sentence should be vacated in light of the Supreme Court's recent ruling in Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442.

On September 12, 1969, Judge Hanson entered an order denying relief on each ground and further ruling that no hearing was required. Notice of appeal from such order was filed September 17, 1969. Petitioner thereafter filed various motions for reconsideration all of which were denied and on December 3, 1969, filed a notice of appeal from the order denying the § 2255 motion dated September 12, 1969, and the orders of October 16, 1969, and December 3, 1969, denying reconsideration. On January 5, 1970, leave to proceed on appeal in forma pauperis was granted by the district court. Additionally, Smith contends that the district court erred in failing to conduct an evidentiary hearing on the motion.

The general facts surrounding Smith's conviction are set out in detail in our opinion on direct appeal and there is no point in reiterating them here.

## I. The "Bruton" Issue.

Smith and one Frank Dalia, aka Anthony Walters, were jointly charged by indictment with entering the Altoona

State Bank, Altoona, Iowa, with the intent of committing larceny. Prior to Smith's trial, Dalia was charged with a similar offense in the District of Indiana to which he there entered a plea of guilty, and, at the same time, on a Rule 20 transfer, entered a plea of guilty to the Altoona bank robbery. On May 2, 1963, Dalia received concurrent twelve-year sentences on each of the offenses.

Smith entered a plea of not guilty to the Altoona bank robbery and was tried to a jury in June 1963 in the Southern District of Iowa. At the trial, upon the government's request, Dalia was called as a "Court's witness." His testimony is reported in full at 331 F.2d 265, 269–272. Dalia, upon being questioned by the prosecutor, gave his name, testified that he had entered a plea of guilty to the Altoona bank robbery, that he had been involved in an accident in Iowa about five and one-half miles east of Altoona on October 22, 1962, that he had been taken to a hospital in Des Moines, Iowa, and that he had lived in Chicago all his life. Dalia invoked the Fifth Amendment in refusing to answer whether he was acquainted with Smith, whether he had left Chicago with Smith and had traveled on the road with him, and whether he knew how long Smith was in Altoona on October 21 and 22.

Defense counsel then questioned Dalia, who testified that he was presently in the custody of the Attorney General under a twelve-year sentence from the United States District Court at Indianapolis based on a plea to bank burglary entered in Indianapolis, that he had been transported to the Southern District of Iowa from Indianapolis and was being held in the Polk County jail. He then testified, in response to questions from defense counsel, that he had not been advised of his rights and that he did not have counsel, and that he did desire counsel for that purpose. Defense counsel then told the court that he desired further cross-examination but thought Dalia was entitled to be advised of his rights first. The court, after questioning Dalia in the absence of the jury, appointed counsel for him. The next day, with the jury present, Dalia told the court that his attorney advised him not to testify, but the court ordered him to take the stand. Defense counsel then asked Dalia the following questions, all of which Dalia refused to answer, his name, whether he entered the Altoona bank on October 22, 1962, whether he advised the prosecution that he would refuse to testify prior to coming to court the preceding day, where he lived, whether he had any information which would bear on the innocence of Smith, and whether he received a concurrent sentence in the Indiana district court on the bank burglary charge in Indiana.

Smith contends that under the principles of *Bruton,* supra, which was given retroactive application by Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed. 2d 917, his right to cross-examine Dalia as secured by the Confrontation Clause of the Sixth Amendment was violated. He alleges that this right was violated by Dalia's admission at the trial that he had entered a plea of guilty to the same charge for which Smith was being tried and by Dalia's repeated invocation of the Fifth Amendment in refusing to answer certain questions. Smith alleges that Dalia's admission to pleading guilty was prejudicial to him, because other evidence adduced at the trial showed that Smith and Dalia had been jointly indicted and that they had been in the same car involved in the accident just east of Altoona on October 22, 1962. Finally, Smith contends that the court's instructions to the jury, to the effect that Dalia's guilty plea should not be considered as having any bearing on Smith's guilt or innocence, did not cure the alleged violation of his Sixth Amendment rights.

The government urged below, and here, that all aspects of error with respect to Dalia's testimony were fully considered and adjudicated adversely to Smith upon his direct appeal and hence were not open to collateral attack. Ordinarily issues fully and fairly considered upon appeal are not open to relitigation. *Bruton* was decided subsequent to

Smith's direct appeal and represents a significant departure from the law existing at the time of the direct appeal. Particularly with regard to the curative effect of jury instructions. Thus the trial court properly recognized that "this case must be gauged by the standards as set forth in *Bruton*."

The court's opinion on the *Bruton* issue includes the following:

"Thus the standard to be applied in this case is whether Dalia's statements can be characterized as 'powerfully incriminating' or 'deadly poison' against Smith so that there was a substantial risk that the jury could not follow a protective instruction. Bruton v. United States, 391 U.S. [123] at 135–36; 88 S.Ct. 1620, 20 L.Ed.2d 476; Slawek v. United States, 413 F. 2d 957 (8th Cir., July 28, 1969). Many of the cases following *Bruton* have applied this standard by examining the impact of such testimony. In those cases where the testimony added substantial or critical weight to the government's case, *Bruton* was applied and the conviction reversed. United States, ex rel. Johnson v. Yeager, 399 F.2d 508 (3d Cir., 1968, cert. denied, 393 U.S. 1027, 89 S.Ct. 620, 21 L.Ed.2d 570); Atwell v. United States, 398 F.2d 507 (5th Cir., 1968).

"In contrast, where the testimony was deemed of minor importance so as not to constitute the type of prejudice as was found in *Bruton*, the convictions were affirmed. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); United States v. Lipowitz, 401 F.2d 591 (3d Cir., 1968); United States v. Levinson, 405 F.2d 971, 988 (6th Cir., 1968).

"Similarly, this Court, after carefully reviewing the record, finds that the wealth of evidence against Smith independent of Dalia's statements, the nature of Dalia's testimony, and the protective instruction given the jury dictate that this portion of Smith's motion be denied. Dalia's testimony did not add substantial or critical weight to the government's case. Nor

can Dalia's testimony be characterized as 'deadly poison' or having a devastating effect upon the jury. In substance, Dalia's statements added little, if anything, to the record.

"This Court finds support in its reasoning in the *Slawek* decision where the Eighth Circuit states:

'As we have repeatedly pointed out above, the essence of the change of direction, which *Bruton* represents over *Delli Paoli*, [Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278] is that of risk and prejudice to the defendant in the admission of a seriously implicating confession of a co-defendant unaccompanied by the opportunity for cross-examination. * * * We feel that the *Bruton* rule is to be applied with practicality and common sense. * * *." 413 F.2d 957 (8th Cir., 1969)."

The trial court has correctly stated the applicable law and has adequately demonstrated that when the law is applied to the facts no reversible error is established. Our present case differs from *Bruton* in the following respects:

1. No joint trial is involved in our present case, hence the jury was not required to perform the mental gymnastics of considering an incriminating statement against only one of two defendants in a joint trial. See Frazier v. Cupp, 394 U.S. 731, 735, 89 S.Ct. 1420.

2. Dalia's admission that he pleaded guilty is a direct admission by Dalia as a witness, not hearsay testimony.

3. As pointed out in our opinion on direct appeal at p. 276 of 331 F.2d, counsel for Smith in effect invited Dalia to claim his privilege.

4. None of the testimony given by Dalia implicated Smith. Dalia's testimony is set out in full at pp. 269–272 of 331 F.2d.

Upon direct appeal for reasons there stated, we determined:

"No prejudice resulted to Smith by the calling of Dalia, his cross-examination and his admission that he was a co-

defendant and that he had entered a plea of guilty and had been sentenced in the United States District Court for the District of Indiana. Failure to have called Dalia under the circumstances existing might have furnished the appellant with the inference that his, Dalia's, testimony would have been against the government. * * * "
331 F.2d 265, 275.

■ We have re-examined the record in light of *Bruton* and are satisfied that the trial court properly determined for reasons stated in its well-considered opinion that Dalia's admission that he entered a plea of guilty to the Altoona bank robbery charge does not warrant a reversal of Smith's conviction.

## II. The Search and Seizure Issue.

Smith in his present motion for the first time raises the issue that the evidence alleged to have been illegally seized was used at his trial. Smith was represented by competent counsel at his trial resulting in his conviction and on his direct appeal. No motion was made to suppress evidence. No objection was made to the reception of any evidence at the trial upon the ground that it was illegally seized.

Smith asserts that Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227, permits him to raise the search and seizure issue in the proceeding before us. *Kaufman* is indeed a far-reaching decision decided by a divided court which permits the raising of a constitutional issue for the first time in a collateral attack upon a conviction. The *Kaufman* majority recognizes that limitations exist on the right to collaterally attack a conviction on constitutional grounds. The opinion at footnote 8 contains the following:

"Furthermore, the § 2255 court may in a proper case deny relief to a federal prisoner who has deliberately bypassed the orderly federal procedures involved at or before trial and by way of appeal—*e. g.*, motion to suppress under Fed.Rule Crim.Proc. 41(e) or appeal under Fed.Rule App.Proc. 4(b). Fay v. Noia, *supra* [372 U.S. 391], n. 3, at 438, 83 S.Ct. 822 [9 L.Ed.2d 837], at 848; Henry v. Mississippi, *supra* [379 U.S. 443], n. 3, at 451–452, 85 S. Ct. 564, [13 L.Ed.2d 408] at 569–570." 394 U.S. 217, 227, 89 S.Ct. 1068, 1075.

For reasons hereinafter stated, we do not reach nor pass upon the issue of whether Smith knowingly and intelligently waived or deliberately bypassed any right he might have to suppress the evidence in controversy.

Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, decided June 22, 1970, subsequent to the trial court's decision and oral argument before us, affords a sound basis for affirmance on the search and seizure issue. *Chambers* holds that seized evidence introduced in that case was obtained as a result of a lawful search of an automobile. The Court quotes and follows the holding in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, where it states:

"The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." 267 U.S., at 158–159, 45 S.Ct. at 287.

The *Chambers* Court sets out Supreme Court decisions supporting the *Carroll* holding to the effect that by reason of the mobility of an automobile the standards of reasonableness of a search of an automobile are less stringent than those applied to the search of a home or an office. The Court then states:

"*Carroll, supra*, holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permisssible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issued to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 U.S. 42, 51, 90 S. Ct. 1975, 1981.

██ The Court holds that probable cause existed for the search of the car on the spot and that such probable cause still obtained for the subsequent search of the car at the station house.[1]

The facts in our present case supporting the reasonableness of the search of the automobile are fully and fairly set out in our prior opinion. Before the search of the automobile at the scene of the accident, highway patrolman White had observed a DeSoto car bearing Illinois license plates traveling upon a little-used road about 1:15 a. m. When White pulled alongside and requested the driver of the car to "hold it," the driver of the car did not answer or comply with the request. The car pulled away, attaining a speed of one hundred miles an hour. White pursued the car. During the chase, he swerved to avoid an obstacle in the road which had not been there when he had traveled it a short time before. He also observed papers fluttering

in the air. Some miles down the road, the DeSoto plunged off the highway, seriously wrecking it and killing the driver. Smith and Dalia were found in the car severely injured. White radioed for an ambulance which arrived and took Smith and his companion to the hospital. White then went back over the chase route and found the object he had observed and discovered that it consisted of a bag containing burglary tools. He then returned to the wrecked car and through a crack in the trunk caused by the wreck observed burglary tools. The trunk was opened but nothing was removed.

White then retraced the chase route and discovered currency and deposit slips of the Altoona bank. He drove to Altoona and discovered that the bank had been burglarized. About 7 a. m. with other officers he searched the wrecked car which had been towed to a garage at his direction with orders to keep it under guard. A picture taken of the tools in the car was received in evidence. The burglary tools were removed from the trunk but they were not offered in evidence at the trial.

A pair of shoes in plain sight in the body of the car was removed. The shoes were introduced in evidence. Expert testimony was introduced to the effect that the soil on the shoes matched soil spots found in the bank. Smith was the only occupant of the car found without shoes at the time of the crash. The burglary tools taken from the sack found on the road were received in evidence and expert testimony was introduced to establish that they were used in the bank robbery.

We are satisfied that under the teaching of Chambers probable cause for the search of the car existed at the time of the search at the scene of the wreck and

---

1. The trial court in the case before us held that the search although not contemporaneous with the arrest was a part of a continuous series of events and that hence the search was reasonable as an incident of a lawful arrest. Chambers casts serious doubt upon the validity of such reasoning. Our holding on the reasonableness of the search of the automobile issue makes it unnecessary for us to pass upon the issue relating to the time and validity of the arrest.

at the time of the subsequent search at the garage later that morning.

The trial court reached the right result in its determination that Smith's Fourth Amendment rights had not been violated by the searches made of the DeSota car.

### III. Sentencing Errors.

Errors 3, 4, and 5 asserted by Smith which have been hereinabove set out, pertain to the twenty-year sentence imposed upon Smith upon his conviction. We affirm with respect to these errors on the basis of the trial court's opinion. The sentence imposed falls within the maximum penalty permitted by statute. Smith has failed to demonstrate that any prejudicial error was committed in connection with the imposition of his sentence.

### IV. Evidentiary Hearing.

 The court committed no error in denying Smith an evidentiary hearing upon his § 2255 motion. The issues raised are mainly legal issues. The material facts are not disputed. The facts are adequately set forth in the motion, supporting affidavits and exhibits and the record of the trial resulting in the conviction.

The judgment of dismissal is affirmed.