Alonzo **CALLOWAY**, Appellant,

v.

**UNITED STATES of America**,
Appellee.

Terry L. S. **McCOWEY**, Appellant,

v.

**UNITED STATES of America**,
Appellee.

Nos. 21579, 21580.

United States Court of Appeals
District of Columbia Circuit.

Argued June 17, 1968.

Decided July 12, 1968.

Certiorari Denied Dec. 9, 1968.

See 89 S.Ct. 464.

Mr. Albert J. Ahern, Jr., Washington, D. C. (appointed by this court), for appellants.

Mr. Joel M. Finkelstein, Asst. U. S. Atty., for appellee. Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Robert K. Webster, Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

Appellants were accused of murdering one Henighan while trying to rob him at about 2:00 or 3:00 A.M. in the hallway of his apartment building. They were charged in a three-count indictment with felony murder, 22 D. C. Code § 2401 (1967); murder with deliberate and premeditated malice, 22 D. C. Code § 2401 (1967); and attempted robbery, 22 D. C. Code § 2902 (1967). They were convicted on Counts 1 and 3 and found not guilty on Count 2. The jury unanimously agreed to a sentence of life imprisonment for the felony murder. The trial judge then imposed a concurrent sentence of one to three years on the attempted robbery count.

■ The Government's case against appellants rested on rather weak circumstantial evidence plus the very strong and very damaging testimony of Diane Sistare, the girl friend of appellant McCowey, who testified to incriminating statements which both appellants had made to her. Considering the Sistare testimony and the circumstances proved, there was sufficient evidence "upon which a reasonable mind might fairly conclude * * * beyond a reasonable doubt" that appellants attempted to rob Henighan and shot him when he resisted. Cooper v. United States, 94 U.S.App.D.C. 343, 345, 218 F.2d 39, 41 (1954), citing Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). Thus the judge was correct in sending the case to the jury on Counts 1 and 3.[1] Assuming *arguendo*

---

1. There was evidence indicating that appellant McCowey knew both where Henighan lived and that Henighan frequently returned home late at night carrying his daily earnings as a photographer. There was also evidence that Henighan was shot following a tussle in which he was heard to shout, "Don't do that." Other evidence indicated that immediately after the shot the assailants fled and ran down the street. Though there was no evidence that anything was actually taken from Henighan's person, his effects were found strewn around the hallway of his apart- ment building. The jury was clearly warranted in its conclusion that Henig- han *was shot while resisting a robbery* attempt which aborted with the shooting.

The evidence against McCowey and Calloway as the perpetrators of the crime was also sufficient to go to the jury. In addition to their statements to Miss Sistare, there was evidence placing them near the scene of the crime shortly before and shortly after its commission. At the scene itself the police found a dark blue cap *similar to* one McCowey was wearing earlier in the

there was insufficient evidence to take the case to the jury on Count 2, any error with respect to that count was harmless in view of the jury's verdict and the fact that Count 1, which properly went to the jury, also carried a potential death penalty.

 There is, however, a more troublesome issue raised on this appeal with respect to the admissibility of Mc-Cowey's hearsay statements made to, and related by, Miss Sistare. While these statements were admissible against Mc-Cowey as admissions, they were not, of course, admissible against Calloway.[2] And under the doctrine recently announced by the Supreme Court in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620 (1968), a defendant is denied his Sixth Amendment right to confront the witnesses against him if the confession of a non-testifying co-defendant which inculpates him is introduced at their joint trial despite a cautionary instruction by the judge that the confession should be considered as evidence only against the confessor. In Bruton the Supreme Court mentioned, but did not pass on, the practice which some courts have adopted of deleting the co-defendant's name from the confession. However, this court has already held that even where the co-defendant's name has been deleted from a confession that incriminates another, it is error, though perhaps not constitutional error, to admit the confession at a joint trial where other testimony makes it fairly inferable that the anonymous reference pertains to the declarant's co-defendant. Greenwell v. United States, 119 U.S.App. D.C. 43, 50, 336 F.2d 962, 969 (1964), cert. denied, 380 U.S. 923, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); Jones v. United States, 119 U.S.App.D.C. 284, 287–288, 342 F.2d 863, 866–867 (1964). In such circumstances, if the admissions are to be introduced in evidence, separate trials are necessary.

 In the instant case there was no confession as such admitted in evidence. Rather there were only the incriminating statements which McCowey made to his girl friend.[3] Because the statements were also likely to implicate Calloway, the trial judge wisely held a hearing outside the presence of the jury at which he heard the testimony of Miss Sistare to determine whether its prejudicial force as against Calloway could be eliminated. He advised her to delete all references to Calloway from her testimony and allowed her to go before the jury. At the conclusion of her testimony before the jury, the judge offered to instruct the jury that the hearsay state-

---

evening. Finally, the murder weapon was found some time after the crime under the front doorstep of a residence which had been Calloway's some time in the past.

2. Calloway himself made very incriminating statements to Miss Sistare, and she testified to these as well. These statements, of course, were admissible against Calloway as admissions and, since they did not implicate anyone else in any way, do not pose the potential problems raised by McCowey's statements. Calloway does argue, however, that his statements to Miss Sistare should not have been admitted because they were elicited as a result of the prosecutor's persistence in seeking to refresh her recollection. We find this argument to be without merit, particularly in view of the fact that Miss Sistare had just previously testified to this conversation before the trial judge outside the presence of the jury.

3. The hearsay statements which potentially prejudiced Calloway were these: (1) Miss Sistare testified that McCowey "told me not to talk too loud [about the shooting of Henighan] because there was a policeman walking in the back of us." (2) She testified that he told her "that he did not shoot the man, that he wasn't going to worry, that he was scared, but he was not going to run away, that he would be in town when the police, if they wanted to pick him up [sic]." (3) In answer to the question "Did he [McCowey] say to you at that time whether or not he was at the scene of the crime?" Miss Sistare replied, "He just said that he did not shoot the man." (4) Miss Sistare testified that McCowey told her "he didn't go into the apartment, that he stayed outside." (5) Finally, she testified that he told her he would turn himself in.

ments of each co-defendant were admissible only against the declarant, but trial counsel for appellants stated that they did not want such an instruction, apparently feeling that the statements did not link the appellants and consequently did not prejudice them.[4]

Affirmed.

4. Appellants, relying on United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), argue that 22 D.C.CODE § 2404 (1967), the first degree murder sentencing statute, is unconstitutional because it authorizes the jury to impose the death penalty. But while the federal kidnapping statute at issue in *Jackson* provided that the defendant could be sentenced to death *only* "if the jury shall recommend," 22 D.C.CODE § 2404 provides that the punishment for first degree murder shall be death *unless* "the jury by a unanimous vote recommends [otherwise]." Consequently the D. C. statute does not "needlessly penalize the assertion of a constitutional right" as the Supreme Court in *Jackson* held the Federal Kidnapping Act did. 391 U.S. at 583, 88 S.Ct. at 1217.

From the alleged unconstitutionality of the death penalty provisions, appellants then contend that to allow *voir dire* questioning of jurors as to their views on capital punishment was reversible error. While their premise is shaky, they have almost hit on a valid conclusion, for in Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770 (1968), decided by the Supreme Court after the briefs on appeal in the instant case had been filed, the Court held that a defendant was denied due process if he were condemned to death by a jury from which those opposed to capital punishment had been systematically excluded. But unfortunately for appellants here, the Court did not say that such a jury could not be expected to return an unbiased verdict as to guilt or innocence and allowed the guilty verdict to stand, remanding only for re-sentencing. Since here the jury in fact recommended life imprisonment, no prejudice can be said to arise from the manner in which the jury was selected or from the questions propounded to the veniremen.

Finally appellant Calloway argues that the judge was wrong to instruct the jury that Calloway's resistance at the time of his arrest could be considered as tending to prove his possible consciousness of guilt. Trial counsel objected to the charge on the theory that there had been no finding that the arrest was lawful and that, if unlawful, Calloway was entitled to resist. The court then held a hearing in which it determined that there was probable cause for the arrest and that the arrest without a warrant was reasonable on the facts of the case. The trial judge advised Calloway's counsel that he was still free to argue what had occurred at the time of arrest and to rebut any inference that his client's conduct demonstrated consciousness of guilt.

The propriety of a charge as to inferences which can be drawn from resistance to arrest depends on the facts of the particular case. *See* Gregory v. United States, 125 U.S.App.D.C. 140, 147, 369 F.2d 185, 192 (1966). Such a charge should only be given where resistance is *probative of consciousness of guilt.* Where it is appropriate, there should be a prior finding by the court, as there was here, that there was probable cause for the arrest. In addition, the charge itself should make clear that no inference can arise from resistance unless the defendant was aware he was being arrested for the offense on trial. But on the facts of this case, even though the charge was to some extent misleading ("Resistance to arrest after the commission of a crime does not create a presumption of guilt"), any prejudice resulting from it was inconsequential.