James SLAWEK, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19462.

United States Court of Appeals Eighth Circuit.

July 28, 1969.

James Slawek, pro se.

Patrick J. Foley, U. S. Atty., and Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.

BLACKMUN, Circuit Judge.

James Slawek appeals from an order entered by Judge Nordbye denying, without a hearing, his 28 U.S.C. § 2255 motion to vacate his sentences. His asserted grounds for relief are (1) his court-appointed attorney's lack of competence; (2) the denial of his right under Rule 17(b), Fed.R.Crim.P., to compulsory process for witnesses in his favor; and (3) prejudice in the receipt of testimony as to his co-defendant's admissions.

Norbert D. Terlikowski, Norbert Derengowski, Edward C. Slawek, and the petitioner were jointly charged in 1966 in a three-count indictment for violations of 18 U.S.C. § 2115 (forcible entry of a post-office building with intent to commit larceny), § 1361 (depredation against government property with damage exceeding $100), and § 371 (conspiracy) in connection with a post-office robbery in Minneapolis in January 1964.

Prior to trial the charges against Derengowski and Edward C. Slawek were dismissed. Terlikowski and the petitioner were jointly tried to a jury. The jury convicted both on all three counts. On December 5, 1966, Terlikowski and Slawek each received sentences of 5 years on the burglary count, 10 years on the property count, and 5 years on the conspiracy count; the sentences were to run concurrently.

Terlikowski and Slawek appealed their respective convictions. This court affirmed. Terlikowski v. United States, 379 F.2d 501 (8 Cir.1967). Each petitioned for certiorari. Those petitions were denied. 389 U.S. 1008, 88 S.Ct. 569, 19 L.Ed.2d 604.

On February 21, 1968, Judge Nordbye reduced the sentences on the property count. Slawek's was lowered to 8 years. The court also ordered that he be eligible for parole at the discretion of the parole board. Six months later Slawek instituted his present § 2255 proceeding.

1. *Competency of counsel.* This point was not raised at the trial or on the appeal from the conviction. It now appears as an afterthought. It is lacking in specificity and borders on the frivolous. In fact, in his reply brief, Slawek "concedes" the issue, whatever that may mean, even though "he believes [it has] merit." As in so many cases of this type, the petitioner freely equates lack of success in his criminal defense with counsel incompetency, and illogically and irrationally blames his predicament, which is primarily of his own doing, upon the inability of counsel to extricate him. Appointed counsel who devotes his talent and his time in a helpful and not well compensated effort usually deserves better treatment than this.

Slawek's argument here is that he was effectively denied the assistance of counsel because counsel permitted him to join in the preparation of motions, to contribute to the brief, and to outline and make suggestions as to the oral argument. We have taken the trouble to

review once again the district court file for the original case and the transcript of that six-day trial. Although Terlikowski's counsel took the laboring oar in the trial, we are fully satisfied, from that review and from our awareness of all that was done by counsel, that Slawek was well represented, that his case was intelligently defended, and that the allegation of incompetency comes with poor grace. We have seen other § 2255 proceedings where petitioners contrastingly complain that counsel failed to permit them to participate enough in the preparation of motions, briefs, and argument. It would thus appear that, when a conviction results, counsel is likely to be criticized for either overcooperation or undercooperation. In the eyes of the convict he has done nothing right.

In Kress v. United States, 411 F.2d 16 (8 Cir. 1969), this court very recently affirmed old and established principles by stating that there is a presumption of competency of court-appointed counsel; that the requirement of the Sixth Amendment is met whenever the accused is supplied with counsel who exercises the judgment expected of one trained in the law and committed to the diligent application of its principles; and that a petitioner will prevail on this issue only if it can be said that what the attorney did or did not do made the proceedings a mockery and shocking to the conscience of the court. Among the cases there cited were Cardarella v. United States, 375 F.2d 222, 230 (8 Cir.1967), cert. denied, 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176; Cross v. United States, 392 F.2d 360, 366 (8 Cir.1968); Taylor v. United States, 282 F.2d 16, 20 (8 Cir. 1960); Kilgore v. United States, 323 F. 2d 369, 372–373 (8 Cir.1963), cert. denied, 376 U.S. 922, 74 S.Ct. 681, 11 L. Ed.2d 617. See, also, Shaw v. United States, 403 F.2d 528, 529 (8 Cir.1968).

There is no merit whatsoever in Slawek's claim of counsel incompetency.

2. *Compulsory process.* This asserted right under Criminal Rule 17(b) relates to Slawek's pretrial request for subpoenas to eight persons, "the far-

thest one being in Miami, Florida, from where the prosecution brought witnesses" and the nearest in the Hennepin County, Minnesota (Minneapolis), jail. He argues that the prosecution produced 31 witnesses by subpoenas issued in blank, some of them from distant places, with none of its requests being denied, and that the "paying defendant" (Terlikowski) obtained witnesses by subpoenas issued in blank, none of which were challenged, but that seven which he (Slawek) requested were refused. It is said that the testimony of those seven "could have, and would have, been the difference between the guilty and innocent verdict."

This point, also, as was the first point, was "conceded" by Slawek in his reply brief. Nevertheless, out of an abundance of caution, we examine it.

The point is dismissible peremptorily because it was raised by Slawek on his direct appeal to this court and rejected. 379 F.2d at 507–508. We noted there, p. 508, "None of the testimony sought would have been material or relevant to Slawek's defense", and we described the request as one for "a useless and abusive issuance of process at Government expense." The nature of the testimony sought to be proved by these witnesses, and its immaterial and, at best, cumulative character, are set forth in detail by Judge Mehaffy in his opinion on the direct appeal and need not be repeated here.

It is still the law, we take it, that matters so meticulously considered and decided on direct appeal need not be reconsidered and decided again on a § 2255 proceeding. Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) and in particular n. 8, p. 227, 89 S.Ct. p. 1074; Sanders v. United States, 373 U.S. 1, 15–19, 83 S. Ct. 1068, 10 L.Ed.2d 148 (1963); Smith v. United States, 356 F.2d 868, 873 (8 Cir.1966), cert. denied, 385 U.S. 820, 87 S.Ct. 44, 17 L.Ed.2d 58; Evans v. United States, 346 F.2d 512, 513 (8 Cir. 1965), cert. denied, 382 U.S. 881, 86 S. Ct. 170, 15 L.Ed.2d 121; Butler v. Unit-

ed States, 340 F.2d 63, 64 (8 Cir.1965), cert. denied, 382 U.S. 847, 86 S.Ct. 92, 15 L.Ed.2d 87; Baca v. United States, 383 F.2d 154, 156 (10 Cir.1967), cert. denied, 390 U.S. 929, 88 S.Ct. 868, 19 L. Ed.2d 994; Bearden v. United States, 403 F.2d 782, 784 (5 Cir.1968), cert. denied, 393 U.S. 1111, 89 S.Ct. 920, 21 L.Ed.2d 808.

While Slawek concedes that review of this point was made on direct appeal, he says that this "is misleading" and "only partly true." He claims that what was argued and decided on the appeal was the trial court's abuse of discretion, whereas what is now argued is that he was denied compulsory process only because of his poverty, and that there "is a clear and distinct difference" between these two arguments. What this comes down to is an assertion that, had he possessed funds, he could have paid for subpoenas and the witnesses would have been present and that he thus was deprived of rights which a rich defendant possesses. But this, too, was argued on the direct appeal.

■■ In any event, a rich defendant may have the right to waste his money on unnecessary and foolish trial steps, but that does not, in the name of necessary constitutional equality, give the indigent the right to squander government funds merely for the asking. Slawek overlooks the fact that compulsory process under Rule 17(b) is a matter within the area of the trial court's discretion. Feguer v. United States, 302 F.2d 214, 241 (8 Cir.1962) and cases cited, cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L. Ed.2d 110; Bandy v. United States, 296 F.2d 882, 892 (8 Cir.1961), cert. denied, 369 U.S. 831, 82 S.Ct. 849, 7 L.Ed.2d 796; Reistroffer v. United States, 258 F.2d 379, 396 (8 Cir.1958), cert. denied, 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed.2d 301. We see no abuse whatsoever of the trial court's discretion here. This issue, too, borders on the frivolous.

3. *The codefendant's admissions.* This court passed upon the admissions issue on the direct appeal. 379 F.2d at 506. Slawek, however, now seeks to invoke the protection of the rule later enunciated in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and made retroactive in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

■ The *Bruton* principle is that the admission, in a joint trial, of a codefendant's confession implicating the defendant in the crime may be violative of the defendant's right of cross examination secured by the Confrontation Clause of the Sixth Amendment despite the trial court's instruction to the jury that it should disregard the confession in determining the defendant's guilt or innocence. *Bruton* overruled Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), where the Court had reached the opposite result by a 5 to 4 vote.

■ It is apparent from a reading of the *Bruton* opinion that what the Court there stressed was "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt" and "powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant." 391 U.S. at 126 and 135–136, 88 S.Ct. at 1622 and 1628.

While *Bruton's* case, as did Slawek's, involved a post-office crime, while certain testimony was admitted only against the codefendant, and while the jury was instructed as to that limitation, we feel that any significant parallel between *Bruton's* case and Slawek's stops at that point. *Bruton's* complaint centered in the admission of a confession by his codefendant that he and Bruton had committed the crime. What confronts us here is something very different and of far less implicating consequence.

Slawek's codefendant, Terlikowski, had a cellmate, Gerald P. Collins. Collins was called as a government witness. He testified about a conversation he had

with Terlikowski in jail in which, according to Collins, Terlikowski said that "him and some associates had committed" the 1964 Minneapolis post-office burglary; that "there was four altogether. Him and three other fellows"; that "they had used a rented car and that somebody had got the license number from that car"; that "there was a kid in the County Jail who had seen him coming out of that Post Office that night and then when we were sitting there he called this kid in the cell with us and told him that if he said anything about it something bad was going to happen to him"; and that that person's name was Kenneth Laing.

This is the testimony complained of and to which the petitioner claims the *Bruton* rule has application. It must be, and is, of course, conceded that the Collins testimony was admissible only against Terlikowski and not against Slawek; that the trial court so instructed the jury; and that Terlikowski did not take the stand and thus was not available for cross examination by Slawek.

On the other hand, the Collins testimony as to Terlikowski's admissions did not name Slawek or identify him in any specific way. It went only to the point that Terlikowski committed the offense with "three other fellows." In order to be implicated Slawek would have to be one of those three.

Slawek, however, suggests that the Collins testimony, when considered with the other evidence in the record, served to clinch his identity as one of the three and thus is offensive and prejudicial under the rule enunciated in *Bruton*, and that the prosecution stressed this in its closing argument.

We view the testimony oppositely from the way Slawek does and regard the Collins testimony—even assuming the jury failed to heed the court's instructional admonition—as no more than duplicative of other evidence in the record and hence as not affecting substantial rights.

The trial record contains evidence, other than the Collins testimony, which directly connects Slawek with Terlikowski and the post-office occurrence. There is testimony to the effect that the two men were together earlier that evening; that there were three or four persons in the robbery automobile; that at the time of the robbery Slawek's car was parked at Terlikowski's home; that shortly after the time of the robbery Slawek and Terlikowski came to Terlikowski's home dirty and unkempt; that they were there only a short time and then departed together; that both men went separately to Chicago a few days later; that they met there; that fruits of the crime were taken to a fence in Chicago; and that Slawek and Terlikowski both mentioned to Slawek's girl, Nancy L. Swan, in Chicago that it was a mistake they had rented a car which had been seen at the post office.[1] Specifi-

---

1. Witness Swan's testimony was not without equivocation. But her appearance on the stand produced the following:

"Q That's the conversation that I am interested in, yes. Continue.

"A It was brought up different times that they could go to court just because they had rented that car and it was seen at the Post Office.

"Q Did they mention anything about that being a mistake?

"A Either they did or someone else did, yes.

"Q They said that that was a mistake that they had made?

"A Yes.

"Q James Slawek was present at that conversation, wasn't he?

"A Yes.

"Q Mr. Slawek was present at one time during this type of discussion, is that correct?

"A Yes.

"Q And Mr. Terlikowski was present at one time during this conversation.

"A Yes.

\* \* \* \* \*

"Q Okay. You said that they said this to you. Now, we asked you what, and on direct examination you testified that they said to you that they, the boys, had made a mistake in renting

cally, Kenneth Laing, called by the prosecution, testified that he observed a man resembling Terlikowski carrying a satchel or bag running from the rear of the post office toward a car containing two or three other men.[2] And witness Martin L. Peavey testified about the number of persons in the car at that time.[3]

The Supreme Court in *Bruton* clearly recognized the continuing existence of situations where joint trials are proper and where an appropriate instruction is sufficiently protective:

"Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' Lutwak v. United States, 344 U.S. 604, 619 [73 S.Ct. 481, 97 L.Ed. 593]; see Hopt v. Utah, 120 U.S. 430, 438 [7 S.Ct. 614, 30 L.Ed. 708]; cf. Fed.Rules Crim.Proc. 52(a). It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information." 391 U.S. at 135, 88 S.Ct. at 1627.

See also Roberts v. Russell, supra, 392 U.S. at 294, 88 S.Ct. 1620, and the dissent in *Delli Paoli*, supra, 352 U.S. at 247, 77 S.Ct. 294.

It is only where "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Bruton v. United States, supra, 391 U.S. at 135, 88 S.Ct. at 1627. Judge Heaney, in writing recently for this court, noted and followed this distinction. Caton v. United States, 407 F.2d 367, 372 (8 Cir. 1969), cert. denied, 395 U.S. 984, 89 S. Ct. 2149, 23 L.Ed.2d 773. In addition, he there observed that Criminal Rule 8(b) "anticipates that evidence may be admissible against one defendant but not necessarily against another."

The *Bruton* rule, with its emphasis on "substantial risk" and "powerfully incriminating extrajudicial statements of a codefendant" obviously must be applied on a case-to-case basis. The courts of appeals already have been carefully and meticulously engaged in this proc-

that automobile. Is that what they said to you, both these defendants at some time?

"A Okay.

"Q Don't say 'okay'. Yes or no.

"A Yes.

\* \* \* \* \*

"THE COURT: Well, did either of these men say anything about a mistake that had been made by either of them in renting the car?

"THE WITNESS: I think so. But I don't remember whether they told me that, and everybody else had told me that, that's why I kept telling him I don't remember anything definite. I can't say that Jim or Danny definitely said, 'We made a mistake, we used that rented car,' you know. That's what he wants me to say and I don't remember.

"THE COURT: No. You shouldn't say it if it isn't true and I don't want you to say anything that isn't true.

"THE WITNESS: No.

"THE COURT: But I want you to be frank and honest in refreshing your recollection so you can give the jury the benefit of your testimony. Was anything said by either of them that they had made a mistake in renting this car? Did they make any such statement to you?

"THE WITNESS: I think so. Yes.

"THE COURT: You think that either one or both of these defendants said that they had made a mistake in renting this car?

"THE WITNESS: I think so."

2. "Q Do you recall how many men were in the car or how many people were in the car?

"A Three or four.

"Q Three or four. Do you know whether or not they were men or women?

"A No, I don't."

3. "Q. Did you see anybody in the car?

"A Well, yes, I did. It was either three or four persons that were in the car at the time.

"Q Do you know whether they were men or women?

"A They looked like men to me."

ess. There are situations where the court has been persuaded as to the possibility of prejudice and has ordered a new trial: Serio v. United States, 131 U.S.App.D.C. 38, 401 F.2d 989 (1968) (words "another man" substituted for the name of the defendant in the implicating confession which went to the jury; the court felt that in that case the jury's association of the defendant with the other man was "well-nigh inevitable"); United States v. Bujese, 405 F.2d 888 (2 Cir.1969) (codefendant confessed to the crime on cross examination; his signed confession implicated the defendant but on the stand he testified that the defendant had not participated, see United States v. Bujese, 378 F.2d 719, 720 n. 1 (2 Cir.1967)); United States ex rel. LaBelle v. Mancusi, 404 F.2d 690, 692 (2 Cir.1968) (redacted confession, but "there is no reasonable doubt that it was inculpatory" as to the defendant); United States ex rel. Johnson v. Yeager, 399 F.2d 508 (3 Cir.1968), cert. denied, 393 U.S. 1027, 89 S.Ct. 620, 21 L.Ed.2d 570 (state prisoners under sentences of death for first degree murder; their "confessions varied materially on the extent of the participation of the co-defendants in the planning and execution of the crime"; these differences "were very material to the jury's decision not to recommend life imprisonment and we are unable to say that the limiting instructions of the trial judge made this constitutional error harmless beyond a reasonable doubt"); Atwell v. United States, 398 F.2d 507 (5 Cir.1968) (codefendant's statement, on a theft-of-government-property charge, that the codefendant and "another individual" had committed the crime, but with the witness referring to the other individual by name; the court observed, "it cannot be gainsaid that his statement added critical weight to the Government's case against Atwell"); Townsend v. Henderson, 405 F.2d 324 (6 Cir.1968) (state charge of prison rebellion with intent to kill or escape; the implicating confession of a codefendant was described by the court as "of crucial significance").

Contrastingly, there are cases where courts of appeals have refrained from extending the *Bruton* rule to the facts before them: Calloway v. United States, 130 U.S.App.D.C. 273, 399 F.2d 1006, 1008–1009 (1968), cert. denied, 393 U.S. 987, 89 S.Ct. 464, 21 L.Ed.2d 448 (there was "no confession as such * * * only the incriminating statements", with counsel "apparently feeling that the statements did not link the appellants"); United States v. Catino, 403 F.2d 491, 495–496 (2 Cir.1968) (the trial court dismissed a conspiracy count at the close of the government's case and then denied a motion for severance on the claim of prejudice in the admission of evidence on the conspiracy count; "[w]e conclude that the careful instructions given by the trial judge * * * where the issues were relatively simple and easily separable, may be assumed to have been effective"); United States v. Lipowitz, 401 F.2d 591 (3 Cir.1968) (the entire testimony of a witness was stricken with respect to all defendants and with instructions to disregard; the court emphasized this striking in its entirety; "the substance of the testimony * * * was of such a minor character as not to constitute the type of prejudice as was found in *Bruton*"); United States v. Levinson, 405 F.2d 971, 988 (6 Cir. 1968), cert. denied, 395 U.S. 958, 89 S. Ct. 2097, 23 L.Ed.2d 744 (statement as to responsibility for examining Veterans Administration mortgages; "it cannot be said that the allegedly inculpatory portions of Strang's oral and written statements had a devastating effect on the minds of the jurors. * * * [T]he record is replete with other evidence and testimony to the same effect"); United States v. Hoffa, 402 F. 2d 380 (7 Cir.1968), rev'd on other grounds sub nom. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969) (conviction of mail fraud, wire fraud, and conspiracy; the statements in question were made by a codefendant to a congressional committee; the court noted that the statements concerned matters as to which there was

no substantial dispute and that the situation "is entirely different from the 'powerfully incriminating statements' in Bruton"); Cortez v. United States, 405 F.2d 875 (9 Cir.1968) (the statement here was, "I told them something was going to go wrong. I just had that feeling"; the court observed that this was not an incriminating statement; "[i]t states no fact implicating anyone. Cortez' name was not mentioned. It mentions no fact connected with a criminal act.").

There are a number of cases, too, where it has been held that Bruton does not prevent the admission of an incriminating extrajudicial statement of a codefendant where that codefendant takes the witness stand and is subject to cross examination. Santoro v. United States, 402 F.2d 920 (9 Cir.1968); Rios-Ramirez v. United States, 403 F.2d 1016 (9 Cir.1968), cert. denied, 394 U.S. 951, 89 S.Ct. 1292, 22 L.Ed.2d 486; Parker v. United States, 404 F.2d 1193, 1196 (9 Cir. 1968); United States v. Boone, 401 F.2d 659, 663 n. 12 (3 Cir.1968). Cf. United States v. Lyon, 397 F.2d 505 (7 Cir.1968), cert. denied, Lysczyk v. United States, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (where, although the witness "subsequently took the stand", the court felt the "damning evidence was before the jury when she took the stand"). And in United States ex rel. Catanzaro v. Mancusi, 404 F.2d 296, 300 (2 Cir. 1968), the court held that Bruton has no application where a defendant who himself confesses attempts to assert prejudice from the confession of his codefendant.

We thus see how the Bruton rule has been distilled in its application to varying fact situations. On balance, we are not inclined to stretch Bruton to the facts of Slawek's case, and we are positive that the Supreme Court would not do so. As we have repeatedly pointed out above, the essence of the change of direction, which Bruton represents over Delli Paoli, is that of risk and prejudice to the defendant in the admission of a seriously implicating confession of a codefendant unaccompanied by the opportunity for cross examination. In the light of the corroborating record before us, and with the statement attributed to Terlikowski merely speaking of "three other fellows", all unnamed, we find nothing which rises to the dignity of Bruton's "substantial risk" and "powerfully incriminating extrajudicial statements of a codefendant." We feel that the Bruton rule is to be applied with practicality and common sense and that, when it is so applied to the facts of Slawek's case, it affords no precedent whatsoever which redounds to Slawek's benefit.

Affirmed.