Jacob Markowitz, J.
Special Term denied in all respects tenant’s application (1) for leave to defend the proceeding and to prosecute her counterclaims as a poor person, by jury of 12; (2) for an order directing the clerk of the court below to waive fees and to place the proceeding on the jury calendar; (3) for permission to serve subpoenas upon witnesses and subpoenas duces tecum for records, without payment of fees; (4) for an order governing the manner of serving the subpoenas and requiring the witnesses to attend on adjourned dates of the proceeding, without payment of fees; and (5) for the assignment of counsel.
Notwithstanding that tenant is on welfare, Special Term held that tenant had not complied with CPLB 1101 in that she had failed to state her income and list her property, with its value. It also held that tenant had failed to include evidentiary facts sufficient to show a meritorious defense and a good counterclaim.
Tenant made a prima facie showing of indigency by her affidavit stating she was a recipient of public assistance and was without assets; and her sworn denial that she owed any rent was a sufficient showing of merit to support the motion. It was, therefore, error to deny her application for leave to defend as a poor person (CPLB 1101).
As a poor person, she may not be required to pay a jury fee (CPLB 1102, subd. [d]).
While no provision of law exempts a poor person from paying a witness his fee (CPLR 2303, 2305, 8001 ; CCA, § 1913), failure to provide for payment of such fees by the city or county would deny an indigent party effective and equal access to the courts (Boddie v. Connecticut, 401 U. S. 371 ; Jeffreys v. Jeffreys, 58 Misc 2d 1045).
*835 However, tenant failed to make known to the court below which witnesses she sought to subpoena. As to public agencies, the court may direct obedience to the subpoena without fee (CPLR 1102, subd. [d]), As to other witnesses, there is no showdng in the record of need for these "witnesses (see People ex rel. Baumgart v. Martin, 9 N Y 2d 351 ; Slawek v. United States, 413 F. 2d 957). The portion of tenant’s motion dealing with subpoenas is accordingly remanded for disposition by the court below.
As to the appointment of counsel for appellant, subdivision (a) of CPLR 1102 provides that “ The court in its order permitting a person to proceed as a poor person may assign an attorney. ’ ’ Court decisions under the similar predecessor provision of the Rules of Civil Practice held that failure to assign counsel made the order defective (Matter of Hawkins v. Hotel Statler, 258 App. Div. 818 ; Schechter v. Lichtenstein, 223 App. Div. 60, 61 ; Pankawicus v. Nichols Copper Co., 169 App. Div. 419, 420). On the other hand, the Sixth Report to the Legislature by the Senate Finance Committee relative to the revision of the Civil Practice Act calls attention to the use of the word “ may ” in subdivision (a) of CPLR 1102 arid the intent to make appointment of an attorney discretionary (6th Report, N. Y. Legis. Doc., 1962, No. 8, p. 173). Be that as it may, the right of an indigent tenant to assigned counsel under the 14th Amendment of the United States Constitution, to defend Ms right to remain in possession of his dwelling is forcefully indicated by recent rulings of the United States Supreme Court (Boddie v. Connecticut, 401 U. S. 371, supra ; Tate v. Short, 401 U. S. 395 ; see, also, Rodriguez v. Rosenblatt, 58 N. J. 281 ; Griffin v. Illinois, 351 U. S. 12 ; Jeffreys v. Jeffreys, 58 Misc 2d 1045, supra ; Tehan v. Shott, 382 U. S. 406, 416).
Absent counsel, there is evident possibility of unfairness in the disparate expertise of landlord’s attorney and that of the tenant appearing in person.
As Mr. Justice Hablan wrote for the United States Supreme Court in Boddie v. Connecticut (supra, p. 377) s 65 Prior cases establish, first, that due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard. Early in our jurisprudence, this Court voiced the doctrine that ‘ [w] her ever one is assailed in Ms person or Ms property, there he may defend. ’ Windsor v. McVeigh, 93 U. S. 274, 277 (1876).”
*836 Mr. Justice Douglas, concurring, observed (p. 383): “ Griffin has had a sturdy growth. ‘ Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution. ’ Roberts v. La Vallee, 389 U. S. 40, 42.”
He noted thereafter (p. 386): “ Here the invidious discrimination is based on one of the guidelines: poverty.” As a “ matter of simple justice, no indigent defendant should be subjected to * * * consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost.” (Rodriguez v. Rosenblatt, supra, N. Y. L. J., May 27, 1971, pp. 1, 5, col. 2.)
If, however, counsel is available to tenant through a public or semi-public agency, tenant should be relegated to such an agency (People ex rel. Baumgart v. Martin, 9 N Y 2d 351, supra ; Slawek v. United States, 413 F. 2d 957, supra).
The issue of assignment of counsel is accordingly also remanded to the court below, to explore the legal facilities available to tenant. If such facilities are not available to tenant, counsel shall be assigned to her by the court below.
Parenthetically, it might be noted that persons of low, moderate and middle income too frequently are also victims of the high cost of legal services and proceedings. Too many are thereby precluded today from obtaining meaningful legal representation or to pursue their right to litigate. The time has come for the Legislature, the courts and the Bar to give heed to the need of low, moderate and middle income litigants as well as of the poverty-stricken for help in meeting legal costs. Whether relief from this burden should take the form of insurance, akin to that covering medical costs, or of public community law offices or of public interest firms, or the assignment of counsel, or legal “ clinics ” established by bar associations, or combinations thereof, or some other form, and to what litigation it should be limited requires immediate attention. A beginning may be made in matrimonial, landlord-tenant, consumer debt and similar civil cases marked with a public interest. Whatever the beginning, the problem of expensive litigation must be faced. It is just as devastating for a litigant to be made bankrupt or poverty stricken by litigation cost as to be unable to pay for the litigation in the first instance because indigent.
“ Courts are the central dispute-settling institutions in our society. * * * Where money determines not merely ‘ the kind of trial a man gets, ’ Griffin v. Illinois, supra, at 19, but *837 whether he gets into court at all, the great principle of equal protection becomes a mockery. ’ ’ (Boddie v. Connecticut, supra, at pp. 388-389 [Brennan, J.]).
If low, moderate or middle income individuals are not to be denied their constitutional right to the use of courts or legal assistance, society must face up to this problem and find a way effectively to respond to it.
Order reversed, without costs and motion granted to the extent of permitting tenant to defend the proceeding as a poor person, without liability for the payment of jury fees and with leave to apply to the court below for the issuance of subpoenas and the appointment of counsel.