Edward Goodell, J.
This application of the tenant, in the form of an order to show cause, relates to two summary nonpayment proceedings and one holdover summary proceeding.
The relief sought is the assignment of counsel, permission to file a jury demand, and the issuance of subpoenas. The order to show cause includes a stay of the trial of the three proceedings pending the hearing and determination of the application.
The first of the nonpayment proceedings, commenced on May 10, 1971, seeks a judgment for rent at the rate of $31.50 a week *391 for the weeks of February 23, March 2, March 9, March 16, March 23, March 30, April 6, April 13, April 20, April 27 and May 4,1971, a total of $346.50 for eleven weeks. For convenience this proceeding, bearing Index No. L&T 41267, is hereafter referred to as the ‘ ‘ May non-payment proceeding. ’ ’
The second of the nonpayment proceedings, commenced on June 3, 1971, seeks a judgment for rent at the rate of $31.50 a week for the weeks of May 11, May 18, May 25 and June 1, 1971, a total of $126 for four weeks. For convenience, this proceeding, ^bearing Index No. L&T 48867, is hereafter referred to as the June non-payment proceeding.”
The third proceeding, a holdover proceeding, was commenced on June 25, 1971, based on a 30-day notice and on the ground that the tenant’s conduct is objectionable. This proceeding, bearing Index No. L&T 55150, is referred to hereafter as the “ June hold-over proceeding.”
The tenant relies upon the decision of the Appellate Term, First Department, in the matter of Hotel Martha Washington Management Co. v. Swinich (66 Misc 2d 833) decided June 16, 1971, in which the tenant appealed from an order of this court, entered March 16, 1971, denying her motion for leave to defend as a poor person and for related relief. That appeal arose in connection with a nonpayment summary proceeding bearing Index No. L&T 15332 instituted by the landlord on February 18, 1971 to recover rent for the weeks of February 9, 1971 and February 16, 1971, totaling $63, hereafter referred to as the “ February non-payment proceeding.”
The Appellate Term reversed the order of the Civil Court and granted the tenant’s motion ‘1 to the extent of permitting tenant to defend the proceeding as a poor person, without liability for the payment of jury fees and with leave to apply to the court below for the issuance of subpoenas and the appointment of counsel.” (66 Misc 2d 837.) (See, also, 65 Misc 2d 1040.)
The question here is whether the determination of the Appellate Term in the proceeding for the recovery of rent for the weeks of February 9 and 16, 1971 is applicable to the facts in the present proceedings and, if .so, the extent to which it is applicable.
I
1. The respondent’s answer in the February nonpayment proceeding, set forth in 23 pages, consisted of a general denial, 18 separately stated affirmative defenses, eight additional affirmative defenses and counterclaims for the sums, respectively, of $1.25, $10.50, $9.62, $.25, $2.45, $17.00, $2.00 and $1,247.28, and *392 finally “a separate distinct cause of action.and/or counterclaim ” for $10,000 “ compensatory and punitive ” damages.
That answer also included a written “ demand for a jury of twelve. ’ ’
On March 3, 1971, the respondent made the motion in the February nonpayment proceeding for leave to defend as a poor person, assert her counterclaims as a poor person, for a jury trial of 12, without payment of the jury fee, and for an order authorizing the service of subpoenas on witnesses and subpoenas duces tecum for records without payment of fees, and for the assignment of counsel.
That motion was made returnable on March 11, 1971, the day for which the trial of the proceeding had been scheduled.
The trial was adjourned at the time of the hearing of the motion to March 22, 1971.
Thereafter, on March 16, 1971, the respondent’s motion was denied in all respects by order dated that day.
An appeal was then taken by the respondent to the Appellate Term from that order. As noted, that order was reversed by the Appellate Term on June 16, 1971 and was granted to the extent indicated above.
2. In the proceedings that are the subject of the present motions a different course of action was followed by the respondent.
A. The nonpayment proceedings:
a. In the “ May non-payment proceeding” (L&T Index No. 41267) the respondent, instead of interposing an answer, demanding a jury trial, and, seeking leave to defend as a poor person as she had done in the February proceeding, filed a petition in the United States District Court for the Southern District of New York on May 11,1971 for the removal of the “ May non-payment proceeding ’ ’ to that court.
The basis of that petition was the respondent’s claim, as stated in part in paragraph 3 of her petition, that ‘[1]1 am denied and cannot enforce in the Courts of the City and State of New York, rights under the Constitution and laws of the United States and federal laws providing for the equal civil and constitutional rights of citizens "of the United States ”,
The petition then alleges various claimed deprivations of the tenant’s constitutional rights such as failure, as stated in paragraph 4d, of “ the State Courts by its Buies, Begulations, Statutes, Kangaroo Court practices, etc. * * * to secure to the indigent and me the same due process of law, equal protection of the law, equal effective representation as afforded and *393 available to the rich and those who can pay ’ ’ and, as stated in paragraph 9 of the petition, that “ on account of the strong prejudice and discrimination against me, I will not be able to obtain or enforce my rights to a fair trial in the State Landlord and Tenant Court, New York County”.
The landlord then filed a petition in the United District Court to remand the May nonpayment proceeding to the Civil Court. That application was granted by order of Judge McLean, United States District Judge, dated June 7, 1971. In the course of his opinion denying the relief sought by the tenant, Judge McLean summarized the tenant’s basis for removal as the contention in substance [1] ‘ that she is indigent and that she cannot obtain a fair trial because the state courts are prejudiced against indigents.”
On the same day and in a separate order Judge McLean denied the tenant’s application for the appointment of an attorney to represent her in opposing petitioner’s motion to remand this action to the State court.
On June 10, 1971 the tenant then obtained an order to show cause, signed by Judge McLean, for a stay of the order remanding the May nonpayment proceeding to the State court and certification to proceed m forma pauperis, returnable on June 11th.
On June 11,1971, Judge McLean granted the tenant’s motion 11 to the extent of staying the order of remand through June 14, 3971 in order to afford respondent-tenant an opportunity to apply to the Court of Appeals for a further stay.”
The petitioner then applied to the United States Court of Appeals for the Second Circuit for an order staying the order of remand.
On June 14,1971 the application was denied by Judges Kaufman, Moore and Timbers in a brief order stating ‘[1] After argument on the application for a stay we hereby deny the stay.”
b. Similar procedure was adopted by the tenant with respect to the “ June non-payment proceeding ”, commenced on June 9, 1971 and bearing index No. L&T 48867.
Instead of interposing an answer or demanding a jury trial or assignment of counsel or the issuance of subpoenas, the tenant again petitioned the United States District Court for the Southern District of New York on June 11, 1971 for removal of the proceeding to the United States District Court.
Despite the remand of the May nonpayment proceeding by Judge McLean, the tenant petitioned for removal on June 11th on substantially the same grounds as she had alleged in her *394 prior petition. Paragraph 5 of the petition dated June 11, 1971 alleges, as did the May petition, that ‘ ‘ I am denied and cannot enforce in the courts of the City and State of New York, rights under the Constitution and laws of the United States and Federal Laws ”.
Again it is alleged in the tenant’s June petition to the Federal District Court that she is the victim of discrimination because she is an indigent, the petition stating in paragraph 9 that she is ‘ ‘ denied and deprived of the same advantages, privileges and/or immunities as afforded to.those who can afford to pay.”
In paragraph 11 of the petition the tenant recognizes the peril of failing to interpose an answer in the Civil Court June nonpayment proceeding, stating that ‘[1]1 am due in the Civil Court of the County of New York on Monday, June 14, 1971, pursuant to the notice of petition and petition in that I must put in an answer within five (5) days after service upon me ”.
The landlord moved to remand on June 25, 1971 and, on July 1, 1971 the proceeding was remanded by Judge Cannella of the United States District Court pursuant to order dated July 1, 1971.
In his order Judge Cannella stated that “ This court concurs in the reasoning of Judge McLean ,set forth in his decision of June 7, 1971; the motion of the Hotel Martha Washington Management Co. to remand the present action to the Civil Court of the City of New York is therefore hereby granted and this action (71 Civ. 2626) is hereby remanded to said Civil Court.”
c. In the meantime, in spite of her unsuccessful attempt to remove the May nonpayment proceeding to the Federal court, the tenant, following the remand to the Civil Court, raised the issue in the Civil Court that she had not been properly served with process in that proceeding. A hearing on the traverse was then granted to her. The hearing took place on June 23, 1971 and resulted in a determination overruling the traverse and setting the proceeding for trial on July 1, 1971 “ with leave to the tenant to file an answer.”
On July 1, 1971 the two nonpayment summary proceedings (as well as the holdover proceeding hereafter discussed) came on for trial. The tenant did not file an answer in either nonpayment proceeding, but, on July 1, 1971, the date set for trial, made a demand for the appointment of counsel, leave to file a jury demand, and for the issuance of subpoenas. The request was denied and the two nonpayment proceedings (and also the holdover proceeding hereafter discussed) were marked ready for trial. The present motion by the tenant, by way of order to show cause, was then made on the following day.
*395 d. The tenant, therefore, in my opinion, is in default with respect to both May and the June nonpayment proceedings.
The time to answer the petition in the May nonpayment proceeding expired initially on May 15, 1971. ' The court, following the hearing of the traverse in that proceeding on June 23, 1971 accorded the tenant leave to file an answer on July 1, 1971, which she did not do.
The time to answer in the June summary proceeding expired on June 14, 1971. No extension of time to answer was granted by the Civil Court in that proceeding.
The petitions for removal to the United States District Court and thereby to divest the Civil Court of jurisdiction did not operate to extend the time to answer in the Civil Court in either proceeding.
Here, it should be noted that, on the argument of the present motion, the tenant stated that on June 15th she had “ an answer, a defense and a counterclaim. ’ ’ She also said in connection with the argument on this motion that on June 23, “I apprised Judge Gold I had defenses and counterclaims and right through the whole procedure, even all my papers from the Federal Court have answers, counterclaims and defenses.” The tenant then continued with the following statement: ‘ ‘ And, I put in oral answers that I do have defenses and I am not in default because I did state these answers ”.
While I accept the tenant’s statement that she told Judge Sandler and Judge Gold that .she had defenses and counterclaims, the fact is that she has not filed answers in either proceeding within the prescribed period as provided by section 732 of the Real Property Actions and Proceedings Law or within the period of the extension granted by Judge Gold in the May nonpayment proceeding.
Ordinarily the court would be disposed to be lenient with regard to failure to interpose an answer as a result of oversight., mistake or some other inadvertent failure, particularly in the case of a litigant appearing in person, but the development in the proceedings before me since their inception and the history of this litigant’s involvement in litigations that have come to the court’s attention in connection with this motion, have led the court to a different conclusion in this instance.
This is not a case where the failure to interpose an answer was the result of mistake, oversight or other inadvertent failure. On the contrary, it was with the knowledge that her time to file an answer was limited, that the respondent chose with deliberation not to proceed in the Civil Court and to refrain from inter *396 posing answers there in favor of an effort to remove the proceedings to the Federal District Court. This conclusion is not a matter of inference or speculation. As previously noted, the tenant stated in paragraph 11 of her petition to the Federal court for removal of the June summary proceeding that “ I am due in the Civil Court of the County of New York on Monday, June 14, 1971 pursuant to the notice of petition and petition in that I must put in an answer within five (5) days after service made upon me.” Again her consciousness of that obligation and her awareness of her failure to comply with it is indicated as stated above in her oral argument before me in connection with the instant motion, when she said in support of her position that she is not in default, that “ on June 15, before Judge Milton Sandler I stated to Judge Sandler I did have an answer, a defense and counterclaim” and that “on June 23, before Judge Gold, I apprised Judge Gold I had defenses and counterclaims and right through the whole procedure, even all my papers from the Federal Court, have answers, counterclaims and defenses.”
Since the respondent chose to avoid proceeding in the Civil Court in favor of an effort to remove the proceedings to the Federal District Court and did not file answers in the Civil Court, she should bear the consequences of a course of action chosen with knowledge of the consequences in the event that it did not succeed.
When that effort failed and the proceedings were remanded by the Federal District Court to the Civil Court, the tenant sought to begin again in the Civil Court from the point from which she had departed on her course through the Federal District Court and the Federal Circuit Court of Appeals as though she has an inalienable right to interrupt and resume the progress of the proceedings in the Civil Court when and as she determines and without any prejudice whatsoever. That is neither a right nor a privilege that the tenant may reserve to herself or dispense for her benefit.
Here it should be added that although the tenant appears personally in the instant proceedings and on this motion, she is an experienced, knowledgeable, sophisticated and resourceful litigant with respect to summary proceeding.
The record before me shows that the respondent became a tenant in the Hotel Martha Washington on July 1,1969 and that in the intervening two years, in addition to the present three summary proceedings, she was also a respondent in at least three additional summary proceedings instituted by the present petitioner that have come to my attention.
*397 My examination of the files of the Civil Court also discloses that prior to the respondent’s residence at the Hotel Martha Washington, she resided at the New Lenox Hotel, located at 151 West 44th Street, from November 1, 1967 to June 18, 1969 when a “Warrant Holding Over ” was executed by a City Marshal. During that period, I note at least three summary proceedings were instituted against her by the New Lenox Hotel Corp. as petitioner.
I shall refer to these additional summary proceedings instituted by the Hotel Martha Washington Management Co. and the New Lenox Hotel Corp. in another connection subsequently in this opinion, but here I observe as pertinent to the disposition of the present motion that in each of these additional proceedings the petitioner interposed pro se a written answer and demand for trial by a jury of twelve.
I conclude, therefore, on this aspect of the present motion, that the failure to file written answers was not inadvertent and that when the respondent elected to follow the extraordinary course of endeavoring to divest the Civil Court of its customary jurisdiction in summary proceedings she did so knowingly and at her peril. (See Gooden v. Galashaw, 42 Misc 2d 8.)
Since the tenant is in default in the nonpayment summary proceedings, her application for the assignment of counsel and for the filing of a jury demand and for the issuance of subpoenas in those two proceedings must be denied.
n
There remains for consideration the tenant’s motion in its relation to the third summary proceedings — the “ June holdover proceeding.”
1. Separate consideration is necessary since the statutory provisions regarding the interposition of answer in holdover proceedings is not the same as it is in nonpayment proceedings.
Section 732 of the Real Property Actions and Proceedings Law now provides in substance that in nonpayment proceedings the notice of petition shall be returnable before the clerk within five days after service and that ‘ ‘ If the respondent answers, the clerk shall fix a date for trial or hearing not less than three nor more than eight days after joinder of issue ”. However, ‘‘ If the respondent fails to answer within five days from the date of service * * * the judge shall render judgment in favor of the petitioner ”.
On the other hand section 731 of the Real Property Actions and Proceedings Law provides as to holdover proceedings that the “ notice of petition shall specify the time and place of the hearing *398 on the petition and state that if the respondent shall fail at such time to interpose and establish any defense that he may have, he may be precluded from asserting such defense or the claim on which it is based in any other proceeding or action.” In conformity with that proviso section 743 of the Beal Property Actions and Proceedings Law provides in part that ‘ ‘ at the time when the petition is to be heard the respondent, or any person in possession or claiming possession of the premises, may answer, orally or in writing. ’ ’
2. On June 9, 1971 the landlord commenced a holdover proceeding, bearing index number L & T 55150, based on the claim that the tenant’s term had expired and on the further claim that her conduct is deemed objectionable by the landlord.
Despite Judge McLean’s order of June 7, 1971 remanding to the Civil Court the May nonpayment proceeding, the tenant presented another petition to the Federal District Court on June 11, 1971 for the removal of the holdover proceeding commenced on June 9 (L & T 55150) to the Federal District Court on substantially the same grounds as her prior application with regard to the May nonpayment proceeding.
On June 14,1971, the tenant served a notice upon the attorney for the landlord and upon the clerk of the Civil Court advising them that the petition for removal had been filed in the United States District Court for the Southern District of New York.
In paragraph 11 of this petition for the removal of the pending holdover proceeding the tenant stated that ‘ ‘ I am due in the Civil Court of the County of New York on Monday, June 14, 1971, pursuant to the notice of petition and petition in that I must put in an answer within five days after service made upon me.”
Counsel for the landlord .stated in his oral argument before me that the holdover proceeding commenced on June 9, 1971 was defective in that a nonpayment form was inadvertently used and that an application for leave to discontinue that proceeding was then made to and was granted by Judge Whitman without prejudice on June 21, 1971.
The holdover proceeding now before me, bearing Index No. L & T 55150, which I have referred to in this opinion as the ‘1 June Holdover Proceeding ’ ’ was then commenced on June 25, 1971, based on the same grounds as the proceeding that was discontinued. The new proceeding was returnable in the Civil Court on July 1, 1971.
On the return date, July 1, 1971, the June holdover proceeding and the two nonpayment summary proceedings appeared. *399 as previously stated, on the calendar of Trial Term Part 49, the Landlord and Tenant Calendar Part where I was then sitting. The tenant applied for the assignment of counsel, jury trial, and the issuance of subpoenas. Counsel for the landlord stated that that morning he had been advised that a remand order had been issued by the Federal District, which I subsequently learned was the order made by Judge Cannella, previously noted.
No answer was submitted in the June holdover proceeding and none had been filed in the nonpayment proceedings. I marked the three proceedings ready for trial.
On the following day, July 2,1971, the tenant submitted to me the present order to show cause. In her affidavit in support of the order to show cause, the tenant states that she has a good and meritorious cause of action and in paragraph 4 of her “additional” affidavit she further states that she is “incorporating my answer, affirmative defenses and counterclaims, Index No. 15332/71, in this affidavit ” and requests “ that this Court take judicial notice and cognizance of the answer, affirmative defenses and counterclaims, Index No. 15332/71 ”.
In my view the tenant cannot interpose in this holdover proceeding the claimed counterclaims and affirmative defenses asserted in the prior summary proceeding bearing Index No. 15332/71 for the following reasons:
Insofar as the counterclaims are concerned the tenant concededly wishes to incorporate in this proceeding the identical counterclaim that she has asserted in a prior proceeding between the same parties that is still pending. Obviously they can’t be asserted twice, since the parties and the issues tendered in this proceeding would be identical with the parties and the issues alleged in the pending prior proceeding. (Berzin v. Litton Ind., 29 A D 2d 857; Bradford v. Brooklyn Trust Co., 269 App. Div. 549; Freechas Realty Co. v. Hall, 259 App. Div. 1022.)
Moreover the tenant’s election to attempt to divest the Civil Court of jurisdiction in the case of the June holdover proceeding was an even more calculated risk than the attempt in the case of the May nonpayment proceeding. Despite the fact that on June 7, 1971, Judge McLean had granted the order to remand the May nonpaymet proceeding to the Civil Court and that there was no assurance as to what the Circuit Court of Appeals would do, the tenant nevertheless chose not to submit to the jurisdiction of the Civil Court. Having made that election consciously and deliberately, the tenant should be hound by it. Accordingly, *400 In my view, not having interposed her counterclaim and affirmative defense on the return day, she is barred from a subsequent attempt to do so.
Therefore, I conclude that insofar as the tendered counterclaims and defenses are concerned, the tenant’s application for a jury trial, the issuance of subpoenas, and the assignment of counsel must be denied.
3. While the tenant is barred in my opinion for the reasons stated above from asserting in the June holdover proceeding the counterclaims and affirmative defenses tendered in the prior summary proceeding, Index Mo. L & T 15332/71, the landlord has the burden of proof, despite the tenant’s default, of establishing its claims that the term has expired and that the tenant is objectionable. With respect to those two issues, the tenant should be heard and in support of her denials of those issues only the tenant is entitled to a jury trial and to the issuance of relevant subpoenas hereafter specified.
4. This leaves for consideration the matter of the assignment of counsel to represent the tenant in connection with the landlord’s claims that the term has expired and that the tenant’s conduct is objectionable.
In accordance with the determination of the Appellate Term of June 16, 1971, I discussed the subject of the assignment of counsel with the Director of Community Actions for Legal Services, Inc., who indicated that he would not wish to designate counsel from his organization and also advised me that the Director of MYF Legal Services is opposed to the assignment of counsel from his organization to represent the tenant. At the suggestion of the Director of Community Action for Legal Services, Inc., I then discussed the matter with Edward Carr of the Legal Aid Society. Mr. Carr has informed me that the Legal Aid Society is willing to represent the tenant if it finds her eligible for legal aid and that for that purpose she should make an appointment to meet Mr. Gerald Mann at 267 West 17th Street.
ni
While it is generally desirable to avoid dicta, my exposure to the present motion and the examination of the record to which it has led, imposed on me, I believe, as a Judge of the Civil Court, an obligation to comment upon and call attention to the effect of this and prior litigation involving the tenant upon the administration of the business of this and other courts.
I am astonished and impressed by the persistence and resourcefulness of this litigant who has kept at bay and challenged the *401 best efforts of experienced counsel to prosecute a succession of summary proceedings to a conclusion.
At the same time, it is disturbing to find that not only have opposing counsel been obliged to engage in unusual and protracted struggles through the courts, but that the summary proceedings in which the tenant has engaged have consumed an inordinate amount of the time of the courts, both trial and appellate, and have subjected the Judges and the courts to abuse, despite what amounts to a deep concern of both for the protection of the poor and the unrepresented litigant.
The relatively brief portion of the litigation involving this tenant which has come to my attention lends support to the cliché that familiarity breeds contempt. In her long and continuous passage through the courts, this litigant has been bold in her disparagement not only of the Judges who did not act as she would have liked them to act but of the courts, as institutions, as well. As time has gone by, this litigant, unimpeded in her progress by courts that have been tolerant in the extreme, has become bolder until she has reached the point of attacking the Criminal Court, the Civil Court, and the Supreme Court of Hew York State in an action now pending in the United States District Court for the Southern District of Hew York.
In that action, filed on April 29, 1971 in the Federal court, the tenant as plaintiff names as defendants, among others, as I have previously stated, the Criminal Court, the Civil Court and the Supreme Court. As relief, the tenant’s demands include compensatory and punitive damages against each of these courts and, in the concluding paragraph of her prayer for relief, states that “ The Courts of the State of Hew York will not grant permanent injunctive relief to plaintiff and they are acting in consort with defendants to violate plaintiff’s rights.”
Among the allegations of the complaint are charges of alleged misconduct on the part of various Judges with respect to this tenant. As an instance, paragraph 44 relates to a former Judge of the Civil Court in connection with a prior summary proceeding.
The previous landlord and tenant proceeding to which the tenant refers in paragraph 44 is the nonpayment summary proceeding instituted by the Hew Lenox Hotel Corp. against the tenant on April 26, 1968, bearing index Ho. L & T 38431. This was the one proceeding, among those that I have examined, in which an attorney was assigned to represent the tenant by order of Judge Sidney Cold on May 31, 1968.
*402 On September 26, 1968, Judge Greenfield signed an order providing that ‘[1] The above entitled proceeding is hereby discontinued without costs or disbursements. Submit order.”
This was followed by an order, also signed by Judge Greenfield, stating in part that “ The Respondent (Tenant), by prior order of this Court having deposited with the Clerk of the Court, the rent for the premises herein, amounting to the .sum of $600.00, and this proceeding having been discontinued by the Petitioner (Landlord) without costs against either of the parties, it is on motion of the attorneys for the Landlord, Petitioner,
“ Ordered, that the Clerk of the Court be and he is hereby directed to pay over to the Petitioner (Landlord) or to its attorneys, the sum of $600, the rent on deposit with the Court.” From the record I have examined, it appears that the tenant took an appeal from the foregoing order pro se. On July 17, 1969, the Appellate Term affirmed the order of September 26, 1968.
In paragraph 44, the tenant refers to Judge Greenfield’s pro forma approval of the discontinuance of the proceeding, subsequently affirmed by the Appellate Term, as a “ Violation of due process of law and that as such defrauded me of my monies and violated my constitutional rights.”
That allegation is then followed by the allegations in paragraph 45 of the complaint “ That these practices are of a continuous and constant custom, usage and method of the City and State Courts to defraud and violate indigents and public assistance recipients of their monies and rights. ’ ’
The Appellate Term of the Supreme Court does not escape the tenant’s condemnation. In paragraphs 32 and 44 of the complaint the tenant makes various uncomplimentary references to it.
In paragraph 32 the tenant alleges that a determination of the Appellate Term reversing a judgment in her favor resulted in ‘ ‘ defrauding me of my monies and making the appeal worthless and denial of equal protection of the laws and just making it a legal stealing of my monies. ’ ’
Paragraph 43 of the complaint makes the further allegation that11 the defendant Hotel Martha Washington Management and Leo Panzirer are acting in consort pursuant to a formed conspiracy with the City of New York Civil Court and the Appellate Term of the Supreme Court and others to harass the plaintiff ”.
Paragraphs of the complaint numbered 21, 23, 24, 25, 29, 46, 47, 59 and 61 contain additional allegations relative to Judges of the Criminal Court and the Civil Court and to those courts *403 as institutions that, in a word, are derogatory. Something of the underlying flavor of these paragraphs is summarized in paragraph 61 where it is said that the “ defendants, acting under color of law in concert, have undertaken, endeavor, planned and executed a campaign of terror, horror, harassment, persecution, punishment by deliberately creating and manufacturing and scheming prejudicial, disruptive, obstructive, unfair court tactics and proceedings and other, for the purpose of subjecting plaintiff to deprivation of rights, privileges and immunities secured to her by the Constitution and laws of the United States and Federal laws ”.
As I have previously noted, the tenant’s petition to the Federal District Court, for the removal of the May nonpayment proceeding to the court, claims various alleged deprivations of her constitutional rights such as the failure, as stated in paragraph 4d of the petition, of ‘ ‘ the State Courts by its Rules, Regulations, Statutes, Kangaroo Court Practices, etc.---to secure to the indigent and me the same due process of law, equal protection of the law, equal effective representation as afforded and available to the rich and those who can pay ”.
In paragraph 9 of that petition she further alleges, as previously noted, that “ on account of the strong prejudice and discrimination against me, I will not be able to obtain or enforce my rights to a fair trial in the State Landlord and Tenant Court, New York County ”.
At this point I note a further instance of the disrespectful attitude of the tenant toward this court and its Judges. As previously stated, after the May nonpayment proceeding was remanded to this court, a traverse hearing was held before Judge Sidney Gold on June 23, 1971. The traverse was overruled and the trial was set for July 1, 1971 with leave to the tenant to file an answer.
On June 24,1971 the tenant addressed a letter to the Administrative Judge of the Civil Court in which, among other things, she stated that ‘ ‘ I accuse Judge Sidney Gold of intentionally and purposefully violating the laws and my rights ”. Her letter concludes with a postscript threatening that “ Unless my complaints be corrected, I will institute further lawsuits in the Federal Courts.”
I mention here one other incident because it is the subject of comment in the moving papers and because it is another indication of the tenant’s brash attitude towards the court.
In paragraph 25 of the tenant’s affidavit in support of the motion before me she states that “ Judge Goodell marked the *404 action ready but refused and failed to render a ruling on my application and when I insisted on a ruling he ordered me out and when I persisted on a ruling the court officers approached me and threatened to throw me out of the courtroom bodily.”
As I have previously stated I was sitting in Trial Term Part 49, the Landlord and Tenants Calendar Part, on July 1, 1971. After I had listened to the tenant and the landlord’s attorney I marked the proceedings that are the subject of this motion, ready. After I made that decision the tenant continued to stand at the counsel table and to argue. I told her in substance that I had made my decision and would listen to no further argument. The tenant, however, continued to stand at the counsel table and continued to argue. I then told her to stop arguing and to withdraw from the counsel table. The tenant disregarded my order and continued to stand at the counsel table and to argue. I then directed a court officer to remove the tenant. As he approached her she left.
I would be among the first to concede that the Landlord and Tenant Calendar Part is not the place for analysis in depth. It is a crowded, busy part. On the morning of July 1, 1971 there were more than 150 proceedings on the calendar including 15 motions. The courtroom was filled not only with lawyers and their clients but also with litigants appearing in person who were watching and listening to the proceedings.
It is necessary in the disposition of the business of that part that decisions be made promptly. Maintenance of the dignity of the court and the preservation of order in the courtroom could not long endure if the Judge presiding in the part permitted his authority to be challenged. My response to this tenant’s challenge was prompt and, in my judgment, necessarily so.
I do not wish to magnify the importance of this incident. Regardless of this instance, no argument is necessary in my opinion to persuade the reader of the record that it demonstrates disrespect for the State courts or that the tenant is attacking their integrity, their dignity and their authority and, moreover, that both the display of disrespect and the attack are deliberate.
While I believe that this reaction to the record is immediate and requires no supporting elaboration, it may not be inappropriate to add the following observations on this subject:
Of course the writing of a letter by a litigant to another, abusing a Judge, constitutes a contempt. (In re Garuba, 139 N. J. Eq. 404; In re Merrill, 88 N. J. Eq. 261; In re Jenkins on, 93 N. J. Eq. 545.)
*405 It is not necessary to consider here, however, whether the defamatory allegations in the Federal District Court complaint regarding Judges of the criminal and civil courts should be treated in the same way as an abusive letter, for in a larger sense the tenant’s complaint to the Federal District Court and her removal petitions to that court abuse and attack, not only the several Judges there mentioned, but the courts as institutions as well. This, in my view, has been done in two ways:
In addition to publishing her charges and thereby offending the dignity, the authority and the integrity of the State courts, the tenant, by the institution of her action in the Federal court, challenges their dignity and authority in another sense by endeavoring to impose upon them the obligation to defend themselves at her instance. This offense is not to be measured by the probabilities as to the success of the effort but by the fact that the very act of defense would impair the dignity and authority of the State courts.
The conclusion that I have reached is that the publication by the tenant of her charges and her creation of a challenge to the State courts to defend themselves in the Federal court constitute a contempt of court and that one or more appropriate proceedings should be commenced requiring the tenant to show cause why she should not be punished for contempt of court.
In my view the Civil Court, the Criminal Court and the State Supreme Court have the inherent power to protect and defend themselves. Self-defense or self-preservation is an inherent right of our courts as it is in the case of other institutions that constitute integral parts of our system of government. As was said by James B. Millikeh, Chief Justice of Kentucky, in an entirely different context, “ The judiciary has a remedy, a remedy dictated by .self-preservation, if by nothing else.” (Address, National Conference of Chief Justices, 1956.)
In Francis v. People (11 F. 2d 860, 864, cert. den. 273 U. S. 693) the court expressed itself on this subject in this way: “ We dispose of this question in its varied forms by holding that inherent in every court within our government, colonial and national, there is power to enforce and protect the administration of justice within its jurisdiction.” And in Ray v. State (186 Ind. 396, 404), the court said “ The right to punish for contempt is inherent in every court. ’ ’
An interesting parallel with this aspect of the case is furnished by Hume v. Superior Ct. (17 Cal. 2d 506). In that case Hume filed a complaint in the United States District Court, Southern District of California, to enjoin the prosecution of certain injunc *406 tion proceedings then pending in a California State court — the Superior Court of Los Angeles County. Among other allegations, the complaint filed in the Federal District Court stated that “ because of the prejudice and local influence the petitioner would be unable to obtain justice in said court or any court in California ” (p. 511). An affidavit subsequently filed by Hume in the Federal District Court contained additional derogatory allegations concerning the Superior Court of Los Angeles County.
The Attorney General of California instituted a contempt proceeding in the Superior Court of Los Angeles County and Hume, after trial, was adjudged guilty of contempt.
In its affirmance of the judgment of the trial court,[1] the Supreme Court of California in a 6 to 1 decision, stated the following (p. 513): “ The chief defense to said charge of contempt relied upon by petitioner is in the nature of a claim that said allegations were privileged because they were made by petitioner in an effort to secure a removal of the cause from the state court to the federal court which claim for removal to the federal court was based primarily upon the diversity of citizenship. However, the fact that the alleged contemptuous statements were contained in pleadings or other papers filed in court does not furnish excuse or defense against the charge of contempt. It is well settled that contempt may be committed by incorporating impertinent, scandalous, insulting or contemptuous language reflecting on the integrity of the court in pleadings, motions, notice of motions, affidavits, and other papers filed in court. ’ ’
IV
1. Among the exhibits submitted to me by the landlord’s attorney upon the argument of the motion before me is a list of 22 separate actions in which the tenant is the plaintiff. The defendants in these actions, instituted during the period from 1968 to 1971, include the Sheriff of the City of New York, the District Attorney of New York County, a Judge of the Criminal Court, the Police Department, the Department of Social Services, and the Criminal Court.
In addition, the litany of causes of action and proceedings attributable to the tenant during the same period that have come to my attention include the action instituted hy the tenant in the Federal District Court in April of this year (Pro se 71, IV 1874) to which I have previously referred, the proceedings instituted by the tenant in the Federal District Court in *407 May and June of this year for the removal of the summary proceedings that are the subject of this motion, a proceeding commenced by the tenant in the United States District Court for the Southern District of New York in May 1968 against the “ Criminal Court of the City of New York”, the “District Attorney of the City of New York”, the “New York City Department of Social Services ” and others, the counterclaims asserted by the tenant in the summary proceedings previously instituted by the Hotel Martha Washington Management Co., to which reference has been made above, and the counterclaims asserted by the tenant in the summary proceedings that were commenced by her prior landlord, the New Lenox Hotel Corp.
2. Without prejudging the merits of this list of actions and proceedings, two questions are raised by their recital:
They are whether there is a reservoir of power from which authority can be drawn to conduct an inquiry for the purpose of determining whether the volume, the repetitive character and the avowed or apparent causes and objectives of litigation sponsored by a particular litigant are such as to clearly establish that it is unwarranted and, if so, whether that authority includes the means to control it as well as to inquire concerning it.
These questions should be considered in the light of the realities with which the courts are faced.
It is not necessary to cite authority for the proposition that this is a time when the judicial system, Federal and State, is confronted with an enormous case load. As a consequence the courts are engaged in a strenuous effort to cope with a flood of litigation both expeditiously and equitably.
In view of the competing needs of litigants for the time of the courts and the obligation of the courts to process litigation promptly and fairly, it is not unreasonable to conclude that their time should not be pre-empted in the service of a particular litigant if it should appear that the litigant is engaged in a career of utilizing their facilities for purposes that are essentially ulterior, such as harassment or the need to satisfy some inner hunger for expression or as a means of releasing some deep-seated frustrations. However much the courts may sympathize with the state of mind of the. troubled litigant, the exigencies of time and the needs of other litigants preclude excessive demands for attention by litigants engrossed in the pursuit of objectives or the satisfaction of needs that in a substantial sense clearly do not belong in the courts.
The determination of the question of fact of when that situation is present is not without difficulty or danger, but it should be noted that the law has recognized the problem of ground *408 less litigation and that the courts have not recoiled from dealing with it.
Barratry is an offense of common-law vintage, since somewhat modified by statute. “Generally, by statute, common barratry is the practice of exciting groundless judicial proceedings.” (9 C. J. S., Barratry, § 2, p. 1547.)
As recently as 1965 the Court of Appeals had occasion to consider an appeal from the conviction of the defendant of common barratry by the Criminal Court of New York City in the case of People v. Budner (15 N Y 2d 253). In that case the defendant instituted nine claims or other actions or legal proceedings in Small Claims Court and Municipal Court. The Court of Appeals affirmed the conviction. Judge Yaw Yoorhis, writing the opinion, stated, in part (p. 255) that the “ evidence is ample to support a finding that these proceedings were conducted with the required statutory intent to vex and annoy. ’ ’
I do not suggest that People v. Budner (supra) should be invoked here as the basis for prosecution. It was predicated on the definition of common barratry in sections 320 to 323 of the Penal Law as it was prior to the amendment of 1967. Those sections were not incorporated in the revision that became effective September 1, 1967.
I do mention it, however, as a precedent for the proposition that the courts have not hesitated to conduct inquiries to determine the question of fact of whether actions are groundless.
In my view there is a more fundamental premise for inquiry than common-law or statutory barratry. It derives from the inherent power of the courts “ to do those things that are necessary for the proper administration of justice”. That power “ has its roots in necessity and its breadth is coextensive with the necessity. Where the necessity is questioned, it is for the court to determine whether the necessity exists.” The State Trial Judge’s Book [2d ed.], p. 30.)
Since inherent power is coextensive with necessity, both inquiry and control, if necessary, are its concomitants. The proper administration of justice is impeded and obstructed by litigation that is repetitiously groundless and, therefore, the courts have the power, if necessary, to remove the impediment or obstruction. To that end, in my view, the contempt power and the power to restrain are appropriate means to accomplish a necessary objective of judicial administration.
In this connection a series of California cases involving a litigant named Stafford is instructive with respect to the power to restrain.
*409 In Stafford v. Russell (128 Cal. App. 2d 794, 797), the court made the following comment regarding Stafford: ‘1 This appellant has received the thoughtful and patient consideration of court after court over the years. He apparently intends to continue indefinitely this vexatious litigation. The fruitless harassment of respondents would be a sufficient evil to be condemned, but his conduct has now become a burdensome imposition upon the courts. The appeal being manifestly unmeritorious and frivolous, appellant is required to pay to respondent not only the usual and ordinary costs of appeal, but also a penalty in the sum of $100.”
Then in Coburg Oil Co. v. Russell (136 Cal. App. 2d 165, 167) the court went further in the expression of its views concerning Stafford. It said: “ Stafford’s repeated efforts in the trial court and by his numerous appeals to relitigate issues that have been decided against him so often have been contumacious and inexcusable except upon the ground of ignorance (and Stafford is not ignorant), or the existence of an incurable litigation complex and an arrogant assumption of final success. Nevertheless, his persistent assertion of claims that have been carefully considered and held untenable by many courts have rendered him an insufferable nuisance. He has been penalized for his frivolous appeal (128 Cal. App. 2d 794, 276 P. 2d 41) in the sum of $100, which, as we are informed, he has not paid. Respondents request that a further penalty be assessed on the present appeal. We are not disposed to do so vain a thing as to impose a penalty that will be ignored. We may observe, however, that it would seem to be in order for the trial courts to place Mr. Stafford under appropriate restraint and thus cause him to divert his energies into some profitable channels ”.
Apparently the trial court adopted the suggestion “ to place Mr. Stafford under appropriate restraint ’ ’ for Application of Stafford (160 Cal. App. 2d 110) involved a habeas corpus proceeding to determine the validity of orders of the Superior Court finding Stafford in contempt, sentencing him to the county jail, imposing fines and directing that he be imprisoned until the fines were paid.
After consideration of Stafford’s conduct in several related cases, the California District Court of Appeals reached the con-, elusion that in his instance and in the particular circumstances of those cases, his persistent misuse of the right to litigate had become such an intolerable imposition upon the trial and appellate courts that it no longer warranted their protection. Citing the record noted above, the appellate court discharged the writ and remanded the petitioner to custody.
*410 Assuredly the courts of California are not less conscious than we that the right to engage in litigation, to use it as a means of expression and to obtain appropriate determinations through that process, is of vital importance, not to be lightly abridged or curtailed. Where, however, the litigious conduct of Stafford had become ‘ ‘ burdensome, ’ ’ and ‘ ‘ a nuisance ’ ’ to the courts, the California District Court of Appeals recommended the application of ‘ ‘ appropriate restraint ’ ’ and then affirmed the Superior Court’s determination although, as it said, “ the punishment imposed appears to be extremely severe ”.
There is one further observation that should be made in this connection before concluding.
3. In her argument before me the tenant stated with a great deal of emotion that she wants security. I have no doubt that her plea for security expressed a deeply felt need.
Unfortunately, in my opinion, neither this nor any other court can give this litigant the security for which she craves. Essentially that requires an ability to relate to people and to see, understand and be tolerant of other points of view.
The tenant, however, is unable to accept disagreement with her point of view. This is illustrated by her recent foray into the Federal court. There she sought the relief she felt was being improperly denied to her in the State courts. When Judge McLean denied her attempt to remove the Civil Court summary proceedings and remanded them to the Civil Court, she appealed to the Circuit Court of Appeals for a stay, and when that application for a stay was denied she filed a notice of appeal to the Supreme Court of the United States.
The fact is that this litigant’s progress through the courts, State and Federal, is an unending quest for satisfactions that cannot be found there. It is utterly fruitless to continue to listen to, entertain and rule upon an endless stream of applications, petitions and appeals in the honored tradition of a judicial system in which the right to be heard is so jealously guarded and preserved. When that right is abused, as occasionally happens, the courts owe a duty to themselves and to other litigants, to inquire and, if inquiry supports the conclusion that they are being utilized improperly, to take appropriate measures in the exercise of their inherent power to administer justice.
V
Accordingly this motion is disposed of as follows:
1(a) Since I have concluded that the tenant is in default in the nonpayment summary proceedings, the application for the *411 assignment of counsel, for the filing of a jury demand and for the issuance of subpoenas in those two proceedings, namely L&T 41267/71 and L & T 48867/71, is denied.
(b) Judgment by default may be entered in the two nonpayment summary proceedings, namely L&T 41267/71 and L&T 48867/71, with a five-day stay of the issuance of a warrant in each of said ‘1 proceedings ’ ’.
2(a) Since I have concluded that the tenant is barred from interposing her counterclaims and affirmative defenses in the holdover summary proceeding, L&T 55150/71, the tenant’s application for a jury, the issuance of subpoenas and the assignment of counsel with reference to said counterclaims and affirmative defenses is denied.
(b) The tenant’s application to defend as a poor person and for a jury trial without payment of the usual jury fee is granted with respect to the trial of the landlord’s claims in the holdover summary proceeding, L&T 55150/71, that the term has expired and that the tenant is objectionable.
In the event that said trial should take place prior to September 1,1971 said jury shall be a jury of 12. In the event, however, that said trial should take place on or after September 1, 1971, said jury shall be a jury of 6.
The clerk is hereby authorized and directed to make the appropriate entries on his record and to place the aforesaid summary proceeding on the calendar for a trial by a jury of 12 or 6, as the case may be, without the payment of the usual fee.
(c) Since the Legal Aid Society has expressed its willingness to represent the tenant in connection with the foregoing trial if it finds her eligible for legal aid, the Legal Aid Society by its duly authorized attorney is hereby assigned to the tenant to act as her counsel and attorney in connection with the foregoing trial, subject only to her establishment of eligibility to be represented by the Legal Aid Society.
For the foregoing purpose the tenant shall make an appointment to meet Mr. Gerald Mann at 267 West 17th Street within ten days after the date of this order.
(d) Since I have concluded that the tenant is barred from interposing her counterclaims and affirmative defenses in the holdover summary proceedings, L&T 55150/71, the tenant’s application for the issuance of subpoenas without the payment of the usual fees is hereby granted to the extent that the persons and records sought to be subpoenaed appear to be relevant with reference to the landlord’s claims that the tenant’s term has expired and that the tenant is objectionable. To that end the *412 following subpoenas and subpoenas duces tecum, submitted by the tenant, have been signed:
Hotel Martha Washington Co. (as modified);
John Goldenberg and Metropolitan Industry Stabilizations (as modified) ;
City of New York Conciliation and Appeals Board (as modified);
Leo Panzirer; John Onorio; Cassandra La Hue; James Erwin; Donald Carroll; Elise Kaesler; Suzanne Whitaker.
3. The trial of the aforesaid holdover summary proceeding, L & T 55150/71, shall take place in Trial Term Part 49 on August 16, 1971 or, if no jury is available on said date, on the first date thereafter on which a jury shall be available.
A copy of this order shall be served upon the Clerk who shall notify the parties of the first date available for a trial by jury subsequent to August 18,1971.
4. It is my recommendation that an appropriate proceeding or proceedings should be instituted in the Supreme Court by or on behalf of the Civil Court to show cause why the tenant should not be punished for contempt of court and why a restraining order should not be issued enjoining the tenant herein from instituting any further actions or proceedings (including counterclaims) in the Criminal Court, the Civil Court or the Supreme Court without the permission of the respective Administrative Judges of the said courts.

. There were four counts of contempt. One count was dismissed for a reason not relevant here.